143 P.3d 1230

**HUI KAKO'O AINA HO'OPULAPULA, a domestic non-profit corporation; Waimana Enterprises, Inc.; and Albert S.N. Hee, Appellants–Appellants,**

v.

**BOARD OF LAND AND NATURAL RESOURCES, State of Hawai'i; Department of Land and Natural Resources, State of Hawai'i; Hawai'i Electric Light Company, Inc., a Hawai'i corporation, Appellees–Appellees.**

**No. 27159.**

Supreme Court of Hawai'i.

Sept. 21, 2006.

See also 102 Hawai'i 257, 75 P.3d 160; 110 Hawai'i 419, 134 P.3d 585.

Dawn N.S. Chang, Honolulu, on the briefs, for appellants-appellants Hui Kako'o Aina Ho'opulapula.

Michele–Lynn E. Luke and Leshan D. Jayasekera (of Richards & Luke), Honolulu, on the briefs, for appellants-appellants Waimana Enterprises and Albert S.N. Hee.

Warren Price, III and Robert A. Marks (of Price Okamoto Himeno & Lum), and John T. Komeiji and Brian A. Kang (of Watanabe Ing & Komeiji), Honolulu, on the briefs, for appellee-appellee Hawaii Electric Light Company, Inc.

Sonia Faust and Linda L.W. Chow, Deputy Attorneys General, on the briefs, for appellees-appellees Board of Land and Natural Resources, Department of Land and Natural Resources, State of Hawai'i.

MOON, C.J., LEVINSON, J., and Circuit Judge CHAN, in Place of DUFFY, J., Recused; ACOBA, J., Concurring and Dissenting Separately, with whom Circuit Judge DEL ROSARIO, in Place of NAKAYAMA, J., Recused, Joins.

Opinion of the Court by MOON, C.J.

In this secondary appeal, appellants-appellants Waimana Enterprises, Inc. (Waimana), Albert S.N. Hee, and Hui Kako'o Aina Ho'opulapula (Hui Kako'o) [hereinafter, collectively, Appellants] appeal from the Circuit Court of the Third Circuit's February 4, 2005 final judgment[1] entered in favor of appellees-appellees Hawaiian Electric Light Company, Inc. (HELCO), Department of Land and Natural Resources (DLNR), and Board of Land and Natural Resources (BLNR) [hereinafter, collectively, Appellees] and the circuit court's April 1, 2005 orders denying the Appellants' post-judgment motions for relief. Essentially, the circuit court dismissed Waimana's and Hee's appeal for lack of jurisdiction, concluding that Waimana and Hee [hereinafter, collectively, Waimana Parties] were collaterally estopped from litigating whether they have standing in the instant matter. As to Hui Kako'o, the circuit court ruled, *inter alia*, that Hui Kako'o lacked standing in the instant matter and that it failed to follow specific procedures promul-

1. The Honorable Ronald Ibarra presided over the underlying proceedings.

gated by the DLNR in requesting a contested case hearing, thereby precluding judicial review pursuant to Hawai'i Revised Statutes (HRS) § 91–14(a) (1993), quoted *infra*.

On appeal, the Appellants claim, *inter alia,* that the circuit court erred in concluding that it lacked jurisdiction to review their appeal. For the reasons discussed below, we conclude that the Appellants' contentions lack merit inasmuch as a contested case hearing did not occur in the instant case, thereby precluding judicial review pursuant to HRS § 91–14(a). Accordingly, we affirm the circuit court's February 4, 2005 final judgment and April 1, 2005 orders denying the Appellants' post-judgment motions for relief.

## I. BACKGROUND

The parties to the instant appeal, except for Hui Kako'o, have been involved in extensive litigation for more than a decade regarding HELCO's plans to expand the Keahole Generating Plant, an electric generating station, on the island of Hawai'i, resulting in several dispositions by this court. *See, e.g., Hawaii Elec. Light Co. v. Dep't of Land & Natural Res.,* 102 Hawai'i 257, 75 P.3d 160 (2003) [hereinafter, *HELCO* ]; *Keahole Def. Coalition, Inc. v. Bd. of Land & Natural Res.,* 110 Hawai'i 419, 134 P.3d 585 (2006) [hereinafter, *Waimana I* ]; *Waimana Enters., Inc. v. Bd. of Land & Natural Res.,* No. 26519, 2006 WL 1491442 (Haw. May 25, 2006) (mem.); *Waimana Enters., Inc. v. Bd. of Land & Natural Res.,* No. 26559, 2006 WL 1469406 (Haw. May 25, 2006) (mem.). As discussed more fully *infra,* the instant case concerns HELCO's request to the BLNR for a long-term water lease at the Keahole Generating Plant.

### A. Factual Background

On February 24, 2004, HELCO sent a letter to the DLNR, requesting the issuance of "a long-term lease of water [from the Keauhou aquifer] for the use of brackish water for its industrial use and fire suppression needs at its Keahole Generating Plant site" on the island of Hawai'i. HELCO requested the sale of a long-term water lease at a public auction pursuant to HRS § 171–58(c) (1993).[2] By letter dated March 8, 2004, the DLNR informed HELCO that the BLNR would consider HELCO's request at the BLNR's public meeting on March 12, 2004, which was subsequently placed on the agenda as "Item D–16."

At the March 12, 2004 meeting, a BLNR staff member recommended that the BLNR "authorize the sale of a water lease by public auction." At that point, counsel for Waimana Parties, Deborah Jackson, came forward to provide testimony to the BLNR. According to the minutes of that meeting, Jackson informed the BLNR that,

in December 2002[,[3]] her colleague, Michelle Luke[,] requested a contested case hearing on behalf of her clients[, *i.e.,* Waimana Parties]. At that meeting[, *i.e.,* a December 12, 2003 BLNR meeting,] the [BLNR] decided to grant [a revocable permit for water use to HELCO for the Keahole Generating Plant]. Ms. Jackson contends the [BLNR] issued HELCO a revocable permit based on a 1994 Environmental Impact Statement (EIS). She went on to inform the [BLNR that,] subse-

---

**2.** HRS § 171–58(c) provides:

Disposition of water rights may be made by lease at public auction as provided in this chapter or by permit for temporary use on a month-to-month basis under those conditions which will best serve the interests of the State and subject to a maximum term of one year and other restrictions under the law; provided that any disposition by lease shall be subject to disapproval by the legislature by two-thirds vote of either the senate or the house of representatives or by majority vote of both in any regular or special session next following the date of disposition; provided further that after a certain land or water use has been author-

ized by the board subsequent to public hearings and conservation district use application and environmental impact statement approvals, water used in nonpolluting ways, for nonconsumptive purposes because it is returned to the same stream or other body of water from which it was drawn, essentially not affecting the volume and quality of water or biota in the stream or other body of water, may also be leased by the board with the prior approval of the governor and the prior authorization of the legislature by concurrent resolution.

**3.** It appears that the reference to "December 2002" should be "December 2003."

quent to their December 12, 2003 meeting[,] the [Land Use Commission (LUC)] ordered HELCO to prepare a new EIS. Because the new EIS has yet to be prepared, Ms. Jackson feels the [BLNR] should not render a decision on this matter today, instead[,] the [BLNR] should wait until the new EIS is prepared.

Consequently, Jackson requested the BLNR to defer "decision making at this time until the [new] EIS is completed." Jackson then informed the BLNR that, if "they are inclined to make a decision today[,] they should reject" HELCO's request for a long-term water lease. Finally, Jackson stated that, if the BLNR accepted HELCO's request, she will "ask for a contested case hearing."

Dickie Nelson, the vice-president of Hui Kako'o,[4] next testified on behalf of Hui Kako'o against HELCO's request for a long-term water lease. The meeting minutes reveal Nelson stated that

> there are 482 acres of land in Keahole of which 153 acres abut HELCO['s] power plant. He feels these lands should be made available to Native Hawaiians on [the Department of Hawaiian Home Land's (DHHL)] waitlist. He noted his organization[, i.e., Hui Kako'o], has serious concerns regarding the potential impacts that this water lease may have on their members['] rights to lease these lands. He feels there have not been adequate studies done on the impacts of the water [lease]. Mr. Nelson noted [that] Micah Kane[, the executive officer of DHHL,]

spoke in support of this item on behalf of the DHHL and those individuals who already have homestead leases. In contrast[, Nelson] represents those individuals on the DHHL waitlist.

Nelson also requested the BLNR to "defer this matter until more information can be provided," stating further that, if a decision is made today, he would request a contested case hearing to receive more information.

Immediately thereafter, the BLNR convened in an "Executive Session" with deputy attorney general Yvonne Izu to discuss the Appellants' oral requests for a contested case hearing as well as the impact of the EIS. After less than ten minutes, the BLNR reconvened and stated that "a contested case hearing is not available." HELCO's request for a long-term water lease was thereafter unanimously approved by the BLNR.

### B. *Procedural History*

On April 12, 2004, the Appellants jointly filed a notice of appeal with the circuit court pursuant to HRS § 91–14(a)[5] and Hawai'i Rules of Civil Procedure Rule 72 (2005).[6] The notice of appeal indicated that the Appellants were appealing from the BLNR's "action" taken at its March 12, 2004 meeting with respect to the authorization of the sale of the long-term water lease by public auction.

On July 13, 2004, Waimana Parties filed a "Motion for Stay of Decision Dated March

---

4. Hui Kako'o "is an organization that represents the beneficiaries and native Hawaiians on the Hawaiian Home Lands wait list." FOF No. 19.

5. HRS § 91–14, entitled "Judicial review of contested cases," provides in relevant part:

> (a) *Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter;* but nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law. Notwithstanding any other provision of this chapter to the contrary, for the purposes of this section, the term "person aggrieved" shall include an agency that is a party to a contested

case proceeding before that agency or another agency.

(Emphasis added.)

6. HRCP Rule 72 provides in relevant part:

> (a) *How taken.* Where a right of redetermination or review in a circuit court is allowed by statute, any person adversely affected by the decision, order or action of a governmental official or body other than a court, may appeal from such decision, order or action by filing a notice of appeal in the circuit court having jurisdiction of the matter. As used in this rule, the term "appellant" means any person or persons filing a notice of appeal, and "appellee" means every governmental body or official (other than a court) whose decision, order or action is appealed from, and every other party to the proceedings.

(Emphasis in original.)

12, 2004." Essentially, Waimana Parties requested the circuit court to enter an order staying the issuance of the long-term water lease to HELCO pending resolution of the instant appeal.[7] On July 19, 2004, Hui Kakoʻo similarly filed a "Motion for Stay of Decision Dated March 12, 2004," requesting the same relief as Waimana Parties. Waimana Parties subsequently joined in Hui Kakoo's motion on July 23, 2004, and Hui Kakoʻo joined in Waimana Parties' motion on August 4, 2004. A hearing on the motions for stay was held on August 11, 2004. At the conclusion of the hearing, the circuit court orally denied the motions.[8]

In the meantime, Hui Kakoʻo filed its opening brief with the circuit court on August 9, 2004. Hui Kakoʻo contended, *inter alia,* that the BLNR (1) erred in denying its oral request for a contested case hearing and (2) failed to comply with HRS § 171–58(c), *see supra* note 2, before authorizing the sale of the long-term water lease. On the same day, Waimana Parties filed their opening brief with the circuit court, raising, in essence, the same contentions as Hui Kakoʻo.

On August 26, 2004, HELCO filed a motion to dismiss Waimana Parties' appeal, in which the BLNR and the DLNR joined on

September 3, 2004. HELCO asserted that, inasmuch as the circuit court had already ruled in the "1994 Remand Order"[9] that Waimana lacked standing to challenge issues relating to the expansion of the Keahole Generating Plant, it follows that Waimana and Waimana's privy, Hee,[10] are precluded from litigating the issue whether they have standing in the instant matter. Thus, HELCO maintained that the circuit court lacked appellate jurisdiction to consider Waimana Parties' present appeal.

On September 10, 2004, Hui Kakoʻo filed a memorandum in opposition to HELCO's motion to dismiss Waimana Parties' appeal. Hui Kakoʻo asserted that HELCO "misconstrue[d] the dispositive legal issue in this administrative appeal[,] which is whether the [BLNR] properly complied with the statutory provisions of [HRS] § 171–58(c) prior to the approval of the [long-term] water lease to HELCO." Moreover, Hui Kakoʻo argued that "standing should not be a barrier to the right of appeal." (Capital letters altered.)

On September 13, 2004, Waimana Parties filed their memorandum in opposition to HELCO's motion to dismiss their appeal. Waimana Parties contended that, "[w]here a party is dismissed from an action, based

---

7. Earlier, on July 1, 2004, a public auction was held for the sale of the long-term water lease, and HELCO purchased the lease.

8. On August 30, 2004, the circuit court entered its written order denying the motions for stay.

9. In a November 9, 1994 remand order, the circuit court entered the following relevant conclusions relating to Waimana's lack of standing to challenge HELCO's conservation district use application (CDUA) with the BLNR that sought to modernize and expand the Keahole Generating Plant [hereinafter, the 1994 Remand Order]:

> (5) Although Waimana argues it is a native Hawaiian-controlled entity whose economic interests, environmental interests and interests in ceded lands are at stake and that, therefore, it has constitutionally protected property interests, the [circuit] court concludes otherwise; as an entity neither physically located near the site of HELCO's proposed expansion nor whose purpose is to protect environmental or Hawaiian interests, Waimana's interest in contesting the CDUA appears to be purely economic, an interest which the DLNR recognized in recommending Waimana's intervention in the CDUA process:

> > [Waimana] is an energy company. It has conducted studies and obtained a lease for development of a generator station at an alternative site, Kawaihae, that may be superior to the Keahole site. Expansion of the Keahole generating station may suppress development of [Waimana's] project.

> (6) Waimana does not have a due process right to a contested case hearing because its economic interest does not constitute "property" within the meaning of the due process clauses of the federal and state constitutions;
> . . . .
> (8) Not having a right to a contested case hearing by statute, rule[,] or by the constitution, Waimana lacks standing to file this Appeal pursuant to [HRS § ] 91–14(a)[, *see supra* note 5].

> *Waimana I,* 110 Hawaiʻi at 422–23, 134 P.3d at 588–89 (ellipses and emphases omitted). Waimana did not appeal the 1994 Remand Order, which was incorporated in a final judgment entered by the circuit court; thus, it did not challenge the circuit court's determination that it lacked standing. *Id.* at 423, 134 P.3d at 589.

10. Hee "is the president, incorporator[,] and majority shareholder of Waimana[.]"

upon a determination that the party lacks standing, *res judicata* unequivocally does not apply."

A hearing was held on HELCO's motion to dismiss Waimana Parties' appeal on September 20, 2004. At the conclusion of the hearing, the circuit court instructed the parties to submit proposed findings and conclusions on their respective positions regarding standing as well as the merits of the appeal.

Also on September 20, 2004, the BLNR and the DLNR jointly filed their answering brief to Waimana Parties' opening brief. The BLNR and the DLNR contended that the circuit court lacked jurisdiction because Waimana Parties did not meet the requirements of HRS § 91–14. Specifically, the BLNR and the DLNR argued that Waimana Parties have not been "specially, personally and adversely affected by special injury or damage to his [or her] personal or property rights" and that they "did not participate in a contested case nor [were they] entitled to a contested case." On the same day, the BLNR and the DLNR jointly filed their answering brief to Hui Kakoo's opening brief. The BLNR and the DLNR asserted that the circuit court lacked jurisdiction because Hui Kakoʻo, like the Waimana Parties, did not meet the requirements of HRS § 91–14. Specifically, the BLNR and the DLNR argued that Hui Kakoʻo was not "personally aggrieved" by the BLNR's decision authorizing the issuance of the long-term water lease and that Hui Kakoʻo did not participate in a contested case nor was it entitled to one. The BLNR and the DLNR also contended that, notwithstanding the lack of jurisdiction, the BLNR fully complied with the requirements of HRS § 171–58(c).

HELCO also filed its answering brief to Hui Kakoo's opening brief on September 20, 2004. HELCO contended, *inter alia*, that

Hui Kakoʻo lacked standing to bring the instant appeal. Moreover, HELCO asserted that the BLNR's decision authorizing the issuance of the long-term water lease on March 12, 2004 did not arise from a contested case hearing. Specifically, HELCO alleged that it was undisputed that "the BLNR's March 12, 2004 public meeting was not a contested case hearing[ ] and that Hui Kakoʻo did not comply with Hawaiʻi Administrative Rule[s] (HAR) § 13–1–29 [11] by submitting a timely written petition to the BLNR for a contested case hearing." Consequently, HELCO maintained that the circuit court lacked appellate jurisdiction to entertain Hui Kakoo's appeal.

On the same day, HELCO filed its answering brief to Waimana Parties' opening brief. HELCO alleged, *inter alia,* that Waimana Parties "lack standing to challenge issues relating to the Keahole [Generating Plant]." HELCO basically reiterated the arguments it had made in support of its motion to dismiss Waimana Parties' appeal, to wit, that, inasmuch as the circuit court had earlier ruled in the 1994 Remand Order that Waimana lacked standing to challenge issues relating to the expansion of the Keahole Generating Plant, it follows that Waimana and Waimana's privy, Hee, are precluded from litigating whether they have standing in the instant matter. HELCO also contended, as it did in its answering brief to Waimana Parties' opening brief, that the BLNR's decision authorizing the issuance of the long-term water lease on March 12, 2004 did not arise from a contested case hearing. Specifically, HELCO argued that the BLNR's March 12, 2004 meeting was not a contested case hearing and that Waimana Parties did not comply with HAR § 13–1–29 by submitting a timely written petition to the

11. HAR § 13–1–29 provides in relevant part:

> (a) A hearing on a contested matter may be requested by the board on its own motion or upon the written petition of any government agency or any interested person who then properly qualifies to be admitted as a party. An oral or written request for a contested case hearing must be made by the close of the public hearing (if one is required) or the board meeting at which the matter is scheduled for disposition (if

> no public hearing is required). *In either situation, the person or agency requesting the contested case hearing must file (or mail and postmark) a written petition with the board not later than ten days after the close of the public hearing or the board meeting, whichever is applicable.* The time for making an oral or written request and submitting a written petition may be waived by the board.
>
> (Emphasis added.)

BLNR for a contested case hearing. Thus, HELCO contended that Waimana Parties' "procedural default [wa]s fatal to their appeal."

On October 11, 2004, the circuit court heard oral argument on the Appellants' appeal, at which time the parties essentially reiterated the arguments made in their briefings to the circuit court. At the conclusion of the hearing, the circuit court stated that it would take the matter "under submission."

On October 28, 2004, the circuit court entered its order granting HELCO's motion to dismiss Waimana Parties' appeal and the BLNR's and the DLNR's joinder therein. On November 3, 2004, the circuit court entered its findings of fact (FOFs), conclusions of law (COLs), and order affirming the BLNR's March 12, 2004 decision. The circuit court entered the following relevant FOFs:

17. On March 12, 2004, the BLNR held a duly-noticed meeting to consider HELCO's request for approval of an auction for the lease for brackish water from the Keauhou aquifer.

18. [The Appellants] appeared at the meeting and requested a contested case hearing.

19. Hui Kako'o is an organization that represents the beneficiaries and native Hawaiians on the Hawaiian Home Lands wait list.

20. Hui Kako'o failed to present any testimony or other evidence to the BLNR during the March 12, 2004 meeting that they (and[,] in Hui Kakoo's case, its members) actually used the area surrounding the Keahole generating station for native Hawaiian traditional and customary practices.

21. Hui Kako'o failed to present any evidence in this appeal to prove that its members actually used the area surrounding the Keahole generating station for native Hawaiian traditional and customary practices.

22. Hui Kako'o did not present any testimony or other evidence to the BLNR demonstrating any harm to the environment from HELCO's use of the brackish water from the Keauhou aquifer.

23. The BLNR denied the [Appellants'] requests for a contested case hearing and unanimously approved HELCO's request as submitted.

24. *Hui Kako'o failed to subsequently file (or mail and postmark) a written petition with the BLNR for a contested case hearing as required by [HAR] § 13-1-29.*

25. Pursuant to public notice, the public auction for the [long-term water] lease was held on July 1, 2004. HELCO was the prevailing bidder and the lease was executed with HELCO on July 19, 2004.

(Emphasis added.) The circuit court also entered the following relevant COLs:

2. [HRS] § 91-14(a) sets forth the following jurisdictional requirements for an agency appeal: (1) the proceeding that resulted in the unfavorable agency action must have been a "contested case" hearing that was "required by law" and "determined the rights, duties, and privileges of specific parties"; (2) the agency action must represent a "final decision and order" or a "preliminary ruling" that such deferral of review would deprive the claimant of adequate relief; (3) *the claimant must have followed the applicable agency rules* and have been involved "in" a contested case hearing; and (4) the claimant's legal interest must have been injured—*i.e.,* the claimant must have standing to appeal. *Pub[.] Access Shoreline Hawai'i v. Hawai'i County Planning [Comm'n]*, 79 Hawai'i 425, 431, 903 P.2d 1246, 1252 (1995) ("*PASH II* ").

. . . .

5. Hui Kako'o has failed to demonstrate that it has standing to appeal the BLNR's March 12, 2004 decision.

6. Hui Kako'o has failed in its burden to demonstrate that it has standing to appeal the BLNR's March 12, 2004 decision.

. . . .

12. A person or entity asserting standing must prove standing at the beginning of the case. *Sierra Club v. Hawai'i Tourism Auth[.], ex rel. B[d.] of Dir[s.]*, 100 Hawai'i 242, 257, 59 P.3d 877, 892 (2002).

Hui Kakoʻo (and [Waimana Parties]) failed to prove standing at the beginning of the case.

13. Hui Kakoʻo failed to produce evidence to show that it or its members have any "personal" interest as native Hawaiians who traditionally and customarily exercised practices for subsidence, cultural, or religious purposes.

14. .... Hui Kakoʻo failed to assert before the BLNR, or thereafter, to adduce evidence that its members had actually exercised traditional and customary native Hawaiian practices that could be affected by the lease of the brackish water.

15. Hui Kakoo's arguments to [the circuit] court for the first time on appeal and unsupported by evidence[] that its members "may" exercise such practices is insufficient as a matter of law to confer standing.

16. Even assuming that Hui Kakoʻo has standing to bring this appeal, the BLNR's March 12, 2004 [decision] must still be affirmed.

17. Hui Kakoo's appeal of the BLNR's March 12, 2004 approval of the sale of the lease at public auction does not arise from a "contested case" hearing pursuant to the jurisdictional requirements of HRS § 91–14(a), and accordingly, this [c]ourt lacks appellate jurisdiction to hear their appeal.

18. The BLNR's March 12, 2004 public meeting was not a contested case hearing.

19. *There is no evidence in the record that [Hui Kakoʻo] complied with HAR § 13–1–29 by submitting a written petition to the BLNR for a contested case hearing from the BLNR's decision to permit the auction of the water lease made on March 12, 2004. Appellants seeking judicial review under HRS § 91–14 must follow agency rules relating to contested case proceedings promulgated under HRS [c]hapter 91.*

20. The BLNR was also not required "by law" to conduct a contested case hearing where, as here, the BLNR's action involved the custodial management of public property. *See Sharma v. State of Hawaiʻi Dep[ʻt.] of Land [&] Natural Res[.],* 66 Haw. 632, 673 P.2d 1030 (1983) (noting that internal management of an agency necessarily includes the custodial management of public property entrusted to the agency, and holding that a contested case hearing was not "required by law" for BLNR decisions relating to such management)[.]

21. HELCO's lease request was granted pursuant to HRS § 171–58. That statute does not require or suggest that a contested case hearing is required before the BLNR may exercise its custodial function to grant water rights by lease at public auction. [Hui Kakoʻo] has failed to demonstrate any statutory basis for a contested case hearing.

22. The [circuit c]ourt further finds that the Appellants were not constitutionally entitled to a contested case hearing . . . .

    . . . .

36. HELCO satisfied its burden to prove that its request to the BLNR for an auction for a [long-term water lease] from the Keauhou aquifer was consistent with the public trust doctrine.

    . . . .

56. . . . [T]he BLNR fully complied with HRS § 171–58(c)[.]

(Emphases added.)

On November 5, 2004, Waimana Parties filed a motion for clarification of the circuit court's order granting HELCO's motion to dismiss Waimana Parties' appeal. Waimana Parties requested the circuit court to disclose:

(1) [T]he factual and legal basis upon which th[e circuit c]ourt apparently determined that [Waimana] lacked standing to bring this administrative appeal;

(2) [T]he factual and legal basis upon which th[e circuit c]ourt apparently determined that [Hee] lacked standing to bring this administrative appeal; and

(3) [T]he identification of any factual findings or legal conclusions derived from outside the submissions on HELCO's motion and the argument at [the] hearing on September 20, 2004[] th[e circuit c]ourt

considered and relied upon in granting HELCO's Motion to Dismiss[.]

(Numbering altered.) Waimana Parties alternatively requested the circuit court to enter findings and conclusions with respect to its order granting HELCO's motion to dismiss. On November 30, 2004, the circuit court entered its order denying Waimana Parties' motion for clarification, stating that:

> HRCP Rule 52(a) [ (2005) [12]] does not require the court to issue [FOFs] and [COLs] with respect to motions to dismiss for lack of jurisdiction because appellants lack standing as a matter of law; and findings and conclusions are not necessary in relation to [Waimana Parties], as the record in this agency appeal clearly sets forth the basis for the court's order. The court issued [FOFs] and [COLs] relating to [Hui Kakoo's] appeal on November 3, 2004.

On February 4, 2005, the circuit court entered final judgment in favor of the Appellees and against the Appellants.

On February 23, 2005, Hui Kako'o filed a motion for relief from the circuit court's FOFs, COLs, and order affirming the BLNR's March 12, 2004 decision pursuant to HRCP Rule 60(b)(6) (2005),[13] which Waimana Parties joined on March 9, 2005. Hui Kako'o stated that:

> In less than three months after the [circuit] court issued its order in the instant appeal, the BLNR granted a [contested case hearing] to challenge the proposed issuance of a water lease under [HRS] § 171–58. On January 28, 2005, the BLNR, in consultation with the Office of the Attorney General, authorized a hearing officer to conduct a [contested case hearing] pursuant to oral requests challenging the proposed sale of a 65 year lease at [a] public auction of water rights for use of the "Blue Hole" Diversion and Portions of a Water Transmission System to Kaua'i Is-

land Utilities Cooperative (KIUC). Clearly, the BLNR's inconsistent positions have resulted in the denial of Hui Kakoo's due process rights to a full and fair opportunity to be heard and to ensure that its constitutional rights are protected.

On the same day, Waimana Parties filed their motion for relief from the February 4, 2005 final judgment pursuant to HRCP Rule 60, primarily raising the same contentions as Hui Kako'o.

On March 4, 2005, HELCO filed its memorandum in opposition to Waimana Parties' motion for relief. HELCO contended, *inter alia,* that "[t]he reasons cited by [Waimana Parties] for relief from the final judgment do not relate to the dismissal of their appeal for lack of standing, and they cannot be 'conferred' standing based upon a subsequent proceeding before the BLNR in an unrelated matter[, *i.e.,* the KIUC matter]." (Capital letters altered.) Moreover, HELCO pointed out that, although a contested case hearing had been requested in the KIUC matter, the BLNR had not yet ordered one. On the same day, HELCO filed its memorandum in opposition to Hui Kakoo's motion for relief, essentially asserting the same arguments it had advanced against Waimana Parties.

Also on March 4, 2005, the BLNR and the DLNR jointly filed their memorandum in opposition to Hui Kakoo's motion for relief. The BLNR and the DLNR contended that Hui Kakoo's failure to submit a subsequent written petition for a contested case hearing pursuant to HAR § 13–1–29 was an independent basis upon which the circuit court could, and did, affirm the BLNR's March 12, 2004 decision. The BLNR and the DLNR also maintained that the KIUC matter was irrelevant to the instant case inasmuch as "[t]here is no basis for [Hui Kako'o] to contend or [the circuit c]ourt to conclude that [the] KIUC [matter] is the same as this case." On

---

**12.** HRCP Rule 52(a) provides in relevant part that "[FOFs] and [COLs] are unnecessary on decisions of motions under Rules 12 [ (motions pleading certain defenses) ] or 56 [ (motions for summary judgment) ] or any other motion except as provided in subdivisions (b) and (c) of this rule." Subdivisions (b) and (c) are not relevant to the instant case.

**13.** HRCP Rule 60(b) provides in relevant part that, "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: .... (6) any other reason justifying relief from the operation of the judgment."

the same day, the BLNR and the DLNR jointly filed their memorandum in opposition to Waimana Parties' motion for relief. Again, the BLNR and the DLNR contended, *inter alia*, that the KIUC matter was irrelevant to the instant case.

The circuit court held a hearing on the Appellants' motions for relief on March 14, 2005. At the conclusion of the hearing, the circuit court orally denied the Appellants' motions for relief. On April 1, 2005, the circuit court entered two separate written orders denying Hui Kakoo's and Waimana Parties' motions for relief.

Prior to the circuit court's entry of the April 1, 2005 orders, Hui Kakoʻo filed its notice of appeal on March 3, 2005, and Waimana Parties filed their notice of appeal on the same day. The foregoing set of appeals was assigned appeal No. 27159. On April 29, 2005, Hui Kakoʻo filed a second notice of appeal, and Waimana Parties filed their second notice of appeal on the same day. The second set of appeals was assigned appeal No. 27276. Both sets of appeals were consolidated under appeal No. 27159 by this court on July 14, 2005.

## II. STANDARDS OF REVIEW

### A. Subject Matter Jurisdiction

"The existence of subject matter jurisdiction is a question of law that is reviewable *de novo* under the right/wrong standard." *Aames Funding Corp. v. Mores*, 107 Hawaiʻi 95, 98, 110 P.3d 1042, 1045 (2005) (internal quotation marks, brackets, and citations omitted). "If a court lacks jurisdiction over the subject matter of a proceeding, any judgment rendered in that proceeding is invalid. Therefore, such a question is valid at any stage of the case, and though a [circuit] court is found to have lacked jurisdiction, we have jurisdiction here on appeal, not of the merits, but for the purpose of correcting an error in jurisdiction." *Bush v. Hawaiian Homes Comm'n*, 76 Hawaiʻi 128, 133, 870 P.2d 1272, 1277 (1994) (internal quotation marks, original brackets, and citation omitted).

### B. Findings of Fact

This court reviews the circuit court's FOFs under the clearly erroneous standard. *Ueoka v. Szymanski*, 107 Hawaiʻi 386, 393, 114 P.3d 892, 899 (2005) (citations omitted).

A[n] [FOF] is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed. A[n] [FOF] is also clearly erroneous when the record lacks substantial evidence to support the finding. We have defined substantial evidence as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

*Bremer v. Weeks*, 104 Hawaiʻi 43, 51, 85 P.3d 150, 158 (2004) (quoting *Beneficial Hawaiʻi, Inc. v. Kida*, 96 Hawaiʻi 289, 305, 30 P.3d 895, 911 (2001)).

### C. Conclusions of Law

This court reviews the circuit court's COLs *de novo*. *Id.* at 51, 85 P.3d at 158 (citation omitted). "A COL is not binding upon an appellate court and is freely reviewable for its correctness." *Allstate Ins. Co. v. Ponce*, 105 Hawaiʻi 445, 453, 99 P.3d 96, 104 (2004) (citations and internal quotations marks omitted). Moreover, "a COL that is supported by the [circuit] court's FOFs and that reflects an application of the correct rule of law will not be overturned." *Id.* (citation omitted, internal quotation marks, and original brackets omitted).

## III. DISCUSSION

As this court has previously stated:

Preliminarily, we reiterate the well-settled principle that appellate courts have an independent obligation to insure they have jurisdiction to hear and determine each case. *Kernan v. Tanaka*, 75 Haw. 1, 15, 856 P.2d 1207, 1215 (1993); *State v. Moniz*, 69 Haw. 370, 372, 742 P.2d 373, 375 (1987); *Bacon v. Karlin*, 68 Haw. 648, 650, 727 P.2d 1127, 1129 (1986). This duty arises from the equally "well-settled rule that the

legislature may define and limit the right of appeal because the remedy of appeal is not a common law right and it exists only by authority of statutory or constitutional provisions[.]" *In re Attorney's Fees of Mohr,* 97 Hawai'i 1, 4, 32 P.3d 647, 650 (2001) (citations omitted). In light of the legislature's prerogative of fixing the limits of appellate jurisdiction, an appealing party's *"compliance with the methods and procedures prescribed by statute is obligatory." Grattafiori v. State,* 79 Hawai'i 10, 13, 897 P.2d 937, 940 (1995) (emphasis added).

*In re Doe,* 102 Hawai'i 246, 249, 74 P.3d 998, 1001 (2003) (brackets in original). Consequently, we first address the Appellees' contention that the Appellants' failure to comply with the specific procedures promulgated by the DNLR, namely, HAR § 13–1–29, in requesting a contested case hearing precludes judicial review pursuant to HRS § 91–14(a).

■ "HRS § 91–14(a) provides the means by which judicial review of administrative contested cases can be obtained. Among its prerequisites, the section requires that a contested case must have occurred before appellate jurisdiction may be exercised." *Pele Defense Fund v. Puna Geothermal Venture,* 77 Hawai'i 64, 67, 881 P.2d 1210, 1213 (1994) (citation omitted). In addition, "[a]ppellants seeking judicial review under HRS § 91–14 must also follow agency rules 'relating to contested case proceedings ... properly promulgated under HRS [c]hapter 91[.]'" *Id.* at 67–68, 881 P.2d at 1213–14 (quoting *Simpson v. Dep't of Land & Natural Res.,* 8 Haw.App. 16, 24, 791 P.2d 1267, 1273 (1990) (third set of brackets and ellipsis in original), *overruled on other grounds by, Kaniakapupu v. Land Use Comm'n,* 111 Hawai'i 124, 139 P.3d 712 (2006)); *PASH,* 79 Hawai'i at 433, 903 P.2d at 1254.

In *Simpson,* the Intermediate Court of Appeals (ICA) held that a public hearing required by law is *not* a contested case where

(1) the agency has properly promulgated specific procedures for a contested case hearing and (2) a party has failed to follow such procedures. *Id.* at 24–25, 791 P.2d at 1273. In that case, the petitioner had applied for a mooring permit from the DLNR and participated in a public hearing required by law. *Id.* at 18, 791 P.2d at 1270. The petitioner, however, did not request a contested case hearing pursuant to the DLNR's agency rules regarding contested case proceedings, specifically, HAR § 13–1–29, *see supra* note 11. *Id.* at 19, 791 P.2d at 1271. After the BLNR denied the petitioner's application for a mooring permit, the petitioner filed a notice of appeal to the circuit court. *Id.* The circuit court dismissed the appeal on the ground that it lacked subject matter jurisdiction inasmuch as there was no final decision from a contested case. *Id.* at 19–20, 791 P.2d at 1271.

On appeal, the ICA agreed with the circuit court that the petitioner's appeal was not from a contested case. *Id.* at 18, 791 P.2d at 1270. Specifically, the ICA concluded that, inasmuch as the petitioner failed to request a contested case hearing as required by HAR § 13–1–29, there was no contested case from which the petitioner could appeal, pursuant to HRS § 91–14(a). *Id.* at 24, 791 P.2d at 1273. The ICA went on to state:

The basic purpose of [s]ubchapter 5 of the [DLNR's "Rules of Practice and Procedure" [14]] is to provide the [BLNR] an opportunity to establish an adequate formal record for judicial review of its decision and order. Since [the petitioner] did not request a contested case hearing, the record of the proceedings before the Board is sparse and inadequate for judicial review. Transcripts of witnesses' testimony at the public hearing, exhibits, if any, presented at the hearing, and the Board's findings of fact and conclusions of law are lacking. In fact, it is difficult to determine from the record who, other than [the petitioner], testified at the ... public hearing. The

---

14. Title 13, chapter 1 of the HAR is entitled "Rules of Practice and Procedure" (Rules). In turn, subchapter 5, entitled "Contested Case Proceedings," is contained in title 13, chapter 1 of the HAR. HAR § 13–1–29 is contained in Title 13, chapter 1, subchapter 5. The ICA noted that

the "DLNR had adopted the Rules establishing formal procedures for contested case proceedings. The Rules, *which were properly promulgated under HRS [c]hapter 91,* are part of the public record." *Id.* at 24, 791 P.2d at 1273 (emphasis added).

Board's decision and order seem to be based entirely on a staff planner's summary of the proceedings and recommendations. Thus, we hold that the public hearing before the Board was not a "contested case hearing" in accordance with the DLNR's Rules. **To hold otherwise would vitiate the right of agencies to make and enforce such rules.**

*Id.* at 24–25, 791 P.2d at 1273 (bold emphasis added).[15]

▇▇▇▇▇▇ Likewise, in this case, HAR § 13–1–29 is the applicable agency rule delineating the specific procedures for requesting a contested case hearing. As previously stated, HAR § 13–1–29 provides in relevant part:

(a) A hearing on a contested matter may be requested by the board on its own motion or upon the written petition of any government agency or any interested person who then properly qualifies to be admitted as a party. An oral or written request for a contested case hearing must be made by the close of the public hearing (if one is required) or the board meeting at which the matter is scheduled for disposition (if no public hearing is required). **In either situation, the person or agency requesting the contested case hearing <u>must</u> file (or mail and postmark) a written petition with the board not later than ten days after the close of the public hearing or the board meeting, whichever is applicable.** The time for making an oral or written request and submitting a written petition may be waived by the board.

(Bold and underscored emphases added.) The parties agree that the Appellants made oral requests for a contested case hearing prior to the close of the March 12, 2004 meeting before the BLNR. However, as the Appellees point out and the Appellants do not dispute, the Appellants failed to subsequently submit a written petition to the BLNR, requesting a contested case hearing. Indeed, the circuit court's unchallenged FOF No. 24 indicates that "Hui Kako'o failed to subsequently file (or mail and postmark) a written petition with the BLNR for a contested case hearing as required by [HAR] § 13–1–29." As such, FOF No. 24 is binding on this court. *See In re Lock Revocable Living Trust,* 109 Hawai'i 146, 154, 123 P.3d 1241, 1249 (2005) (FOFs not challenged on appeal are binding on the appellate court); *Okada Trucking Co. v. Bd. of Water Supply,* 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002) (same). Although the circuit court did not enter any findings relating to Waimana Parties' failure to subsequently file (or mail and postmark) a written petition with the BLNR for a contested case hearing as required by [HAR] § 13–1–29, Waimana Parties do not point to any evidence in the record that they

---

15. We note that, four years after *Simpson* was decided by the ICA, this court in *Pele Defense Fund* criticized *Simpson's* decision to reverse and remand the case to the circuit court in light of the DLNR's and the BLNR's failure to inform the petitioner "of his right to request a 'contested case hearing' and the time within which such request must be made." *Simpson,* 8 Haw.App. at 26, 791 P.2d at 1274. In *Pele Defense Fund,* this court stated that,

[a]lthough the ICA found that the circuit court lacked jurisdiction because [the petitioner] did not participate in a contested case, it nonetheless reversed the dismissal of [the petitioner's] claim and remanded with direction to remand the matter to the DLNR for a contested case hearing. <u>Lacking jurisdiction, the circuit court could do nothing but dismiss the appeal</u>. **Requiring a remand to the DLNR with instructions to provide a contested case hearing directly contradicts the proper finding of a lack of jurisdiction in <u>Simpson</u>.** Jurisdiction is the base requirement for any court

considering and resolving an appeal or original action. <u>Appellate courts, upon determining that they lack jurisdiction—or that any other courts previously considering the case lacked jurisdiction—shall not require anything other than a dismissal of the appeal or action. Without jurisdiction, a court is not in a position to consider the case further.</u>

77 Hawai'i at 69 n. 10, 881 P.2d at 1215 n. 10 (citation and internal quotation marks omitted) (bold and underscored emphases added); *see Bush,* 76 Hawai'i at 136, 870 P.2d at 1280 (holding that judicial review by the circuit court of the agency's denial of the appellants' request for a contested case hearing as well as review of the merits of the agency's decision "is unattainable due to a lack of subject matter jurisdiction"). In fact, this court recently overruled *Simpson* "to the extent that it required a remand to the DLNR with instructions to provide a contested case hearing when it lacked jurisdiction to do so." *Kaniakapupu,* 111 Hawai'i at 136, 139 P.3d at 724.

followed their oral request for a contested case hearing with a subsequent written petition "not later than ten days after the close of the [March 12, 2004] board meeting[.]" Accordingly, inasmuch as the DLNR had properly promulgated specific procedures for a contested case hearing, *see supra* note 14, and the Appellants failed to follow the requisite procedures, there was no contested case from which the Appellants could appeal, pursuant to HRS § 91–14(a).

■ Nonetheless, the Appellants contend on appeal that their non-compliance with the DLNR's specific procedures for a contested case hearing should be excused because such compliance would have been "futile." Although this court has recognized that, "[w]henever exhaustion of administrative remedies will be futile[,] it is not required[,]" *Poe v. Hawai'i Labor Relations Bd.*, 97 Hawai'i 528, 536, 40 P.3d 930, 938 (2002) (internal quotation marks, original brackets, and citations omitted), it cannot be said that submitting a written petition requesting a contested case hearing after the BLNR's oral rejection of the Appellants' earlier oral requests would have been a futile act. *Cf. Poe*, 97 Hawai'i at 531, 40 P.3d at 933 (holding that a "public employee pursuing an individual grievance exhausts his or her administrative remedies when the employee completes every step available *to the employee* in the grievance process and a request to the employee's exclusive bargaining representative to proceed to the last grievance step, *which only the representative can undertake,* would be futile") (emphases added); *Winslow v. State*, 2 Haw.App. 50, 56, 625 P.2d 1046, 1051 (1981) (holding that the "appellant could not be required to exhaust contractual remedies in an action against the union *where no such remedies actually exist*") (emphasis added). Here, it appears, based upon a review of the events that occurred at the March 12, 2004 meeting, that the BLNR's consideration of the Appellants' oral

requests were somewhat perfunctory. At that meeting, the Appellants orally requested contested case hearings. The BLNR then convened in an "Executive Session" with deputy attorney general Yvonne Izu to discuss the oral requests. The minutes of the March 12, 2004 meeting reveal that the Executive Session lasted no more than ten minutes. The minutes also indicate that the BLNR had several remaining items on its agenda to address during the March 12, 2004 meeting. Consequently, given the number of other items on the meeting's agenda that required the BLNR's attention, coupled with the seemingly cursory consideration of the Appellants' oral requests for a contested case hearing, it cannot be said that the BLNR had ample time to fully consider the merits of the Appellants' oral requests.

■ Moreover, HAR § 13–1–29(a) appears to recognize that a denial of a timely oral or written request will be reconsidered by the BLNR upon the filing of a written petition that complies with the requirements set forth in subsection (b) of HAR § 13–1–29.[16] As previously stated, HAR § 13–1–29(a) requires that "[a]n oral or written request for a contested case hearing must be made by the close of the ... board meeting at which the matter is scheduled for disposition" and that, "[i]n either situation, [i.e., orally or in writing,] the person ... requesting the contested case hearing must file ... a written petition with the board not later than ten days after the close of the ... board meeting." HAR § 13–1–29, however, is silent with respect to the conditions under which a written petition is required, i.e., upon either the grant or denial of an oral request or only upon the denial of an oral request. Based on a plain reading of HAR § 13–1–29, a written petition is required even if the oral request is *granted*. However, requiring a petitioner to file a written petition *after* relief

**16.** HAR § 13–1–29(b) provides that the subsequent written petition requesting a contested case hearing contain "concise statements" of:
   (1) The legal authority under which the proceeding, hearing or action is to be held or made;
   (2) The petitioner's interest that ma[y] be affected;

   (3) The disagreement, denial, or grievance which is being contested by the petitioner;
   (4) The basic facts and issues raised; and
   (5) The relief to which the party or petitioner seeks or deems itself entitled.

has already been granted is nonsensical.[17] Thus, given the substantive requirements for a written petition, it is apparent that HAR § 13–1–29 anticipates exactly what occurred in this case—an oral request and insufficient time to deliberate, resulting in a perfunctory ruling. The filing of a subsequent substantive written petition would not only allow the petitioner another opportunity to convince the BLNR of his or her position, but would allow the BLNR to more carefully and deliberately reconsider its ruling and reverse itself, if appropriate. In that regard, the BLNR's oral rejection of an oral or written request for a contested case hearing presented by the close of a board meeting cannot be said to be absolute or final. To conclude otherwise would effectively void the latter portion of HAR § 13–1–29(1), which mandates the filing of "a written petition with the board not later than ten days after the close of the public hearing or the board meeting." In other words, if the BLNR's oral rejection of a petitioner's oral or written request made by the close of a public hearing or a board meeting is deemed conclusive, then HAR § 13–1–29's requirement that the oral or written request be followed by a written petition would be superfluous or of no significance. Consequently, any interpretation that the BLNR's oral rejection is absolute or final in the context of HAR § 13–1–29 would ignore the "cardinal rule of statutory construction that courts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute." *Coon v. City & County of Honolulu*, 98 Hawai'i 233, 259, 47 P.3d 348, 374 (2002) (internal quotation marks and citations omitted); *see Medeiros v. Hawai'i Dep't of Labor & Indus. Relations*, 108 Hawai'i 258, 265, 118 P.3d 1201, 1208 (2005) (stating that "[t]he general principles of construction which apply to stat-utes also apply to administrative rules" (citation omitted)).

Finally, as previously stated, because it cannot be said that the BLNR had ample time to fully consider the merits of the Appellants' oral requests, it follows that the Appellants should be afforded another opportunity to provide more information to the BLNR. However, HAR § 13–1–29 already provides the Appellants a second opportunity to submit additional information in order to convince the BLNR of their position. Had the Appellants presented a subsequent written petition as permitted by HAR § 13–1–29, they could have taken advantage of the opportunity to state, *inter alia*, their "interest that ma[y] be affected[,]" HAR § 13–1–29(b)(2), *i.e.*, their basis for standing. Consequently, "the source of the alleged 'futility' [was] not the administrative process but, rather, the part[ies] who [were] seeking relief[, *i.e.*, the Appellants]." *In re Doe Children*, 105 Hawai'i 38, 60, 93 P.3d 1145, 1167 (2004) (holding that the complainant could not avail herself of the "futility exception" because she could have requested an impartial due process hearing but chose not to do so). Accordingly, we hold that the Appellants failed to comply with the specific procedures promulgated by the DNLR, specifically, HAR § 13–1–29, in requesting a contested case hearing and that such failure precludes judicial review pursuant to HRS § 91–14(a).[18]

## IV. CONCLUSION

Based on the foregoing, we affirm the circuit court's February 4, 2005 final judgment and April 1, 2005 orders denying Appellants' post-judgment motions for relief.

Concurring and Dissenting Opinion by ACOBA, J., with whom DEL ROSARIO, J., Joins.

In this case, the majority decides as to the appeal of Appellant–Appellant Hui Kako'o Aina Ho'opulapula (Hui Kako'o) that "no"

---

17. In fact, HAR § 13–1–29 appears to anticipate such a scenario by providing the BLNR with authority to waive the time requirement for making an oral or written request and submitting a written petition. HAR § 13–1–29(a) ("The time for making an oral or written request and sub-mitting a written petition may be waived by the board.").

18. In light of this court's holding, this court need not address the remainder of the Appellants' contentions.

does not mean no, even in the face of an administrative rule that clearly does not provide for "reconsideration" of a denial. The effect of this approach is unjust, inasmuch as, based on the plain language of Hawai'i Administrative Rule (HAR) § 13–1–29,[1] Hui Kako'o could not have had adequate notice that to preserve its right to judicial review under Hawai'i Revised Statutes (HRS) § 91–14(a) (1993)[2] of the Hawai'i Administrative Procedure Act (HAPA), it was required to file a written petition for a contested case hearing, even after being denied that hearing and that its failure to do so now voids its appeal. I would hold, rather, that Hui Kako'o was not provided an adequate opportunity to establish its standing as allowed under the Hawai'i Constitution, article XII section 7, before Appellees–Appellees Board of Land and Natural Resources (BLNR) and Department of Land and Natural Resources (DLNR) and that the case should be remanded to BLNR to allow for such an opportunity.

For similar reasons, I would hold that Appellants–Appellants Waimana Enterprises, Inc. (Waimana) and Albert S.N. Hee (Hee), Waimana's president, should not be subject to HAR § 13–1–29 as the majority otherwise holds. However, because the standing of Waimana and Hee was previously decided and not appealed, they are barred by the doctrine of collateral estoppel from contesting the grant by BLNR and DLNR of a long-term lease to use brackish water[3] drawn from the Keauhou aquifer to Appellee–Appellee Hawaii Electric Light Company, Inc. (HELCO) for use in HELCO's Keahole power plant (the Keahole plant or Keahole generating station). *See Keahole Def. Coalition v. Bd. of Land & Natural Res.*, 110 Hawai'i 419, 134 P.3d 585 (2006) [hereinafter *Waimana I*];[4] *Waimana En-*

1. Hawai'i Administrative Rule (HAR) § 13–1–29, entitled "Request for hearing," states:
    (a) A hearing on a contested matter may be requested by the board on its own motion or upon the written petition of any government agency or any interested person who then properly qualifies to be admitted as a party. *An oral or written request for a contested case hearing must be made by the close of the public hearing (if one is required) or the board meeting at which the matter is scheduled for disposition (if no public hearing is required). In either situation, the person or agency requesting the contested case hearing must file (or mail and postmark) a written petition with the board not later than ten days after the close of the public hearing or the board meeting, whichever is applicable. The time for making an oral or written request and submitting a written petition may be waived by the board.*
    (b) A petition requesting a contested case hearing shall contain concise statements of:
    (1) The legal authority under which the proceeding, hearing or action is to be held or made;
    (2) The petitioner's interest that may be affected;
    (3) The disagreement, denial, or grievance which is being contested by the petitioner;
    (4) The basic facts and issues raised; and
    (5) The relief to which the party or petitioner seeks or deems itself entitled.
    (Emphasis added.)

2. Hawai'i Revised Statutes (HRS) § 91–14, entitled "Judicial review of contested cases," provides in relevant part:
    (a) *Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review*

*pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter;* but nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law. Notwithstanding any other provision of this chapter to the contrary, for the purposes of this section, the term "person aggrieved" shall include an agency that is a party to a contested case proceeding before that agency or another agency.
(Emphasis added.)

3. Brackish groundwater is described as water with "less salt than seawater but undrinkable." *Webster's Third New International Dictionary* 265 (1961).

4. *Keahole Def. Coalition v. Bd. of Land & Natural Res.*, 110 Hawai'i 419, 423–24, 134 P.3d 585, 589–90 (2006) [hereinafter *Waimana I*], concerned BLNR's March 25, 2002 grant of HELCO's first extension of time to complete construction under conservation district use permit (CDUP) HA–487A. In *Waimana I*, it was held that

    Waimana Enterprises, Inc. (Waimana) lacked standing to challenge the decision of [the] Board of Land and Natural Resources (BLNR) regarding a time extension that it granted to ... Hawaii Electric Light Company, Inc. (HELCO) to complete construction of HELCO's Keahole power station inasmuch as Waimana was barred by collateral estoppel and does not have a sufficient property interest to have suffered a due process violation under the

ters., *Inc. v. Bd. of Land & Natural Res.*, No. 26519, 2006 WL 1491442 (May 25, 2006) (mem.) [hereinafter *Waimana II* ];[5] and *Waimana Enters., Inc. v. Bd. of Land & Natural Res.*, No. 26559, 2006 WL 1469406 (May 25, 2006) (mem.) [hereinafter *Waimana III* ].[6] Accordingly, I would affirm in part the February 4, 2005 final judgment and the April 1, 2005 order denying the motion for relief from the order filed November 3, 2004, of the circuit court for the third circuit (the court),[7] as related to Waimana and Hee. However, I would vacate the court's February 4, 2005 final judgment and April 1, 2005 order denying the motion for relief from order filed November 3, 2004, as related to Hui Kakoʻo. In my view, the instant case should be remanded to the court with instructions to remand to the BLNR to conduct a hearing as to Hui Kakoʻo's standing.

## I.

Waimana, Hee, BLNR, and DLNR have been involved in extensive litigation for more than a decade regarding construction of the Keahole plant, HELCO's Conservation District Use Application (CDUA) HA–487A. A November 4, 2003 settlement agreement was eventually reached between the Keahole Defense Coalition, citizens Mahi Cooper and Peggy Ratliff, HELCO, the Department of Health, BLNR, DLNR, and the Department of Hawaiian Home Lands (DHHL) concerning the power plant.[8] Hui Kakoʻo [9] was not a party to this prior litigation.

In the instant case, HELCO's request for the long-term lease to use brackish groundwater from the Keauhou aquifer was discussed at the BLNR's March 12, 2004 meeting. Dickie Nelson (Nelson), the vice-president of Hui Kakoʻo, spoke against the sale of the lease. He told BLNR that there

---

Fourteenth Amendment to the United States Constitution or article I, section 5 of the Hawaiʻi Constitution[.]

The concurring opinion in *Waimana I*, authored by Substitute Justice Dexter D. Del Rosario, addressed Waimana's arguments to the effect that a November 4, 2003 settlement agreement therein was contrary to law and, hence, unenforceable; that the governmental agencies involved in the case "breached their public duty and the public trust by agreeing to the settlement"; that this court would be abdicating its appellate responsibility if it did not conclude that the third circuit court had improperly vacated its prior ruling in that case that reversed a decision of the BLNR denying HELCO an extension of time to complete construction on its power plant; and that it was denied due process and equal protection. *Id.* at 435–41, 134 P.3d at 601–07.

5. *Waimana Enters., Inc. v. Bd. of Land & Natural Res.*, No. 26519, 2006 WL 1491442 (May 25, 2006) (mem.) [hereinafter *Waimana II* ] related to BLNR's October 10, 2003 grant of a second extension to HELCO.

6. Pursuant to the November 4, 2003 settlement agreement, HELCO agreed to transfer 90% of its existing rights to potable water to the DHHL for use in its residential developments. Potable water is water that is "suitable, safe, or prepared for drinking." *Webster's Third New International Dictionary* at 1774. In order to transfer these rights, HELCO sought a long-term lease for use of brackish groundwater in the aquifer beneath the Keahole plant.

*Waimana Enters., Inc. v. Bd. of Land & Natural Res.*, No. 26559, 2006 WL 1469406 (May 25, 2006) (mem.) [hereinafter *Waimana III* ] concerned BLNR's December 12, 2003 grant of a

revocable permit to use the brackish groundwater. As stated in *Waimana III*, HELCO was in the process of pursuing a long-term lease, but due to the length of the process, HELCO applied for the revocable permit until the lease was obtained. *Waimana III*, memo op. at 3. Prior to this court's disposition in *Waimana III*, the lease was granted and the revocable permit was cancelled. *Id.* at 4. It was determined in *Waimana III* that the appeal regarding the revocable permit did not fall under the mootness exception of cases capable of repetition yet evading review. *Id.* at 6–8. Hence, the appeal in *Waimana III* was dismissed as moot. *Id.* at 8. The present appeal, No. 27159, is specifically concerned with the challenge by Waimana, Hee, and Hui Kakoʻo to the BLNR's grant of the sixty-five-year lease to HELCO to use the brackish groundwater referred to in *Waimana III*.

7. The Honorable Ronald Ibarra presided.

8. For related cases, see *Hawaiʻi Elec. Light Co. v. Dep't of Land & Natural Res.*, 102 Hawaiʻi 257, 75 P.3d 160 (2003); *Keahole Def. Coalition v. Hawaii Elec. Light Co.*, No. 22921 (dismissed for lack of appellate jurisdiction Jan. 20, 2000); *Hawaii Elec. Light Co. v. Keahole Def. Coalition*, No. 25153, 2004 WL 823210 (dismissed Apr. 12, 2004); *Keahole Def. Coalition v. Hawaii Elec. Light Co.*, No. 25446, 2004 WL 64699 (dismissed Jan. 13, 2004).

9. Hui Kakoʻo Aina Hoʻopulapula (Hui Kakoʻo) is a purported domestic non-profit corporation that, according to it, "represents the beneficiaries and native Hawaiians on the Hawaiian Home Lands wait list."

are 482 acres of land in Keahole, 153 acres of which abut HELCO's power plant. Nelson expressed his feeling that those lands should be made available for native Hawaiians on the DHHL wait list.

He explained that his organization had "serious concerns" about the impact the issuance of a long-term water lease may have on the rights of Hui Kakoʻo's members to lease land in Keahole and that adequate studies have not been done to determine such impact. Nelson related that although DHHL supported the water lease, it represented persons who already had leases to land in Keahole, whereas Hui Kakoʻo represented persons on the "wait list." Finally, he asked BLNR to defer rendering a decision, but if a decision was to be made that day, he would request a contested case hearing.

BLNR then moved into "Executive Session" to discuss the requests for a contested case hearing and the environmental impact statement (EIS) with deputy attorney general Yvonne Izu (Izu). Izu informed BLNR that contested case hearings on dispositions "were not allowed." BLNR apparently relied on this court's holding in *Sharma v. Dep't of Land & Natural Res.*, 66 Haw. 632, 673 P.2d 1030 (1983), to deny the requests made by Waimana, Hee, and Hui Kakoʻo for a contested case hearing. Although not specifically discussed in the minutes of the March 12, 2004 meeting, the parties agree that *Sharma* was the basis for the BLNR's decision. Accordingly, the requests for a contested case hearing were denied. HELCO's request for the sale of a long-term water lease was then unanimously approved.

## II.

On November 3, 2004, the court entered its "Findings of Fact, Conclusions of Law, and Order Affirming the [BLNR's] March 12, 2004 Decision." The relevant findings of fact (findings) were as follows:

4. As part of the settlement of the litigation, HELCO agreed to transfer 90 percent of its existing incremental entitlement to 100,000 gallons per day ("gpd") of drinking water to the [DHHL] in order to facilitate DHHL's residential development projects in Kona.

. . . .

6. Under the Settlement Agreement, the transfer of drinking water to DHHL is conditioned upon HELCO securing an adequate supply of brackish water to meet its cooling, fire suppression and other industrial requirements at the Keahole generating station.

7. *Without the alternative supply of brackish water, HELCO cannot transfer the drinking water to DHHL because HELCO will need to apply its available drinking water to industrial requirements in order to operate the Keahole generating station.*

. . . .

20. Hui Kakoʻo failed to present any testimony or other evidence to the BLNR during the March 12, 2004 meeting that they (and in Hui Kakoʻo's case, its members) actually used the area surrounding the Keahole generating station for native Hawaiian traditional and customary practices.

21. Hui Kakoʻo failed to present any evidence in this appeal to prove that its members actually used the area surrounding the Keahole generating station for native Hawaiian traditional and customary practices.

22. *Hui Kakoʻo did not present any testimony or other evidence to the BLNR demonstrating any harm to the environment from HELCO's use of the brackish water from the Keauhou aquifer.*

23. The BLNR denied [Waimana and Hee's] and Hui Kakoʻo's requests for a contested case hearing and unanimously approved HELCO's request as submitted.

24. *Hui Kakoʻo failed to subsequently file (or mail and postmark) a written petition with the BLNR for a contested case hearing as required by HAR § 13–1–29.*

(Emphases added.) The court did not enter a finding concerning HAR § 13–1–29 with respect to Waimana and Hee similar to finding no. 24 regarding Hui Kakoʻo. The court entered the following relevant conclusions of law (conclusions):

**46**

5. Hui Kakoʻo has failed to demonstrate that it has standing to appeal the BLNR's March 12, 2004 decision.

6. Hui Kakoʻo has failed in its burden to demonstrate that it has standing to appeal the BLNR's March 12, 2004 decision.

. . . .

11. While it has been recognized that native Hawaiians may have a special interest in proceedings affecting their rights traditionally and customarily practiced for subsistence, cultural, and religious purposes, *see* [*Pub. Access Shoreline Hawaii v. Hawaii County Planning Comm'n*, 79 Hawaiʻi 425, 434, 903 P.2d 1246, 1255 (1995) (*PASH II*)], this interest must also be personal—*i.e.* "clearly distinguishable from that of the general public," and the association's members must demonstrate that they actually engage in the aforementioned activities. *See* [*Pub. Access Shoreline Hawaii v. Hawaii County Planning Comm'n*, 79 Hawaiʻi 246, 254, 900 P.2d 1313, 1321 (1993) (*PASH I*)], and *Ka Paʻakai O Kaʻaina v. Land Use Comm'n*, 94 Hawaiʻi 31, 34, 7 P.3d 1068, 1071 (2000). *Hui Kakoʻo has failed to make such a showing.*

12. A person or entity asserting standing must prove standing at the beginning of the case. *Sierra Club v. Hawaiʻi Tourism [Auth.], ex rel. [Bd.] of Directors*, 100 Hawaiʻi 242, 257, 59 P.3d 877, 892 (2002). *Hui Kakoʻo (and [Waimana and Hee])failed to prove standing at the beginning of the case.*

13. Hui Kakoʻo failed to produce evidence to show that it or its members have any "personal" interest as native Hawaiians who traditionally and customarily exercised practices for subsistence, cultural, or religious purposes.

14. Unlike the detailed evidence of traditional and customary practices presented in [*PASH I*] and [*Ka Paʻakai O Kaʻaina*], Hui Kakoʻo failed to assert before the BLNR, or thereafter, to adduce evidence that its members had actually exercised traditional and customary native Hawaiian practices that could be affected by the lease of the brackish water.

15. Hui Kakoʻo's arguments to this [c]ourt for the first time on appeal and unsupported by evidence, that its members "may" exercise such practices [are] insufficient as a matter of law to confer standing.

. . . .

17. Hui Kakoʻo's appeal of the BLNR's March 12, 2004 approval of the sale of the lease at public auction does not arise from a "contested case" hearing pursuant to the jurisdictional requirements of HRS § 91–14(a) [of the HAPA], and accordingly, this [c]ourt lacks appellate jurisdiction to hear their [sic] appeal. *See In re: [Int'l Bhd.] of Painters [&] Allied Trades*, 104 Hawaiʻi 275, 281, 88 P.3d 647, 653 (2005) [(2004)] . . . (holding that in order to be entitled to judicial review pursuant to HRS [c]hapter 91, a party "must have participated in a 'contested case' hearing" (*quoting Alejado v. City & County of Honolulu*, 89 Hawaiʻi 221, 226, 971 P.2d 310, 315 (App.1998) (construing HRS § 91–14(a))).

18. *The BLNR's March 12, 2004 public meeting was not a contested case hearing.*

19. *There is no evidence in the record that the Appellant*[10] *complied with HAR § 13–1–29 by submitting a written petition to the BLNR for a contested case hearing from the BLNR's decision to permit the auction of the water lease made on March 12, 2004.* Appellants seeking judicial review under HRS § 91–14 must follow agency rules relating to contested case proceedings promulgated under HRS Chapter 91. [*Pele Def. Fund v.] Puna Geothermal Venture*, 77 Hawaiʻi [64,] 67–68, 881 P.2d [1210,] 1213–14 [ (1994) ]; *Simpson v. DLNR*, 8 Haw.App. 16, 23, 791 P.2d 1267, 1273 (1990).

20. The BLNR was also not required "by law" to conduct a contested case hearing where, as here, the BLNR's action involved the custodial management of public property. *See* [*Sharma*] (noting that internal management of an agency necessarily includes the custodial management

___

**10.** Although the court refers to "the Appellant," based on finding of fact (finding) 24, it is assumed it was referring to Hui Kakoʻo.

of public property entrusted to the agency, and holding that a contested case hearing was not "required by law" for BLNR decisions relating to such management); HRS § 171–13 [ (1993) ] (providing that the BLNR may "[d]ispose of public land in fee simple, by lease, lease with option to purchase, license or permit"); HRS § 171–1 [ (1993) ] (" 'Land' includes all interests therein and natural resources *including water*, minerals, and all such things connected with land, unless otherwise *expressly* provided.") (Emphases added.)

21. HELCO's lease request was granted pursuant to HRS § 171–58 [ (1993) ]. That statute does not require or suggest that a contested case hearing is required before the BLNR may exercise its custodial function to grant water rights by lease at public auction. Appellant has failed to demonstrate any statutory basis for a contested case hearing. *See* HRS § 171–58(c)–(g); *Bush v. Hawaiian Homes [Comm'n]*, 76 Hawai'i 128, 870 P.2d 1272 (1994) (holding that if the statute governing the activity in question does not mandate a hearing prior to the administrative agency's decision-making, the actions of the agency do not amount to a "final decision or order in a contested case" from which an appeal is possible).

22. The [c]ourt further finds that the Appellants were not constitutionally entitled to a contested case hearing. Claims for a due process right to a hearing [require] an analysis of: 1) whether the particular interest which the claimant seeks to protect by a hearing is "property" within the meaning of the due process clauses of the state and federal constitutions; and 2) if the interest is "property," what specific procedures are required to protect it. *Aquiar v. Hawai'i Housing [Auth.]*, 55 Haw. 478, 495, 522 P.2d 1255, 1266 (1974).

. . . .

27. The [c]ourt concludes that the actual procedures used by the BLNR in this matter for the approval of a lease through an auction comported with due process, because, among other things, the approval involved a matter of internal, custodial management. *See Sharma.*

. . . .

29. There is no evidence of any procedural impropriety during the public meeting or during the decision-making process. Accordingly, the [c]ourt finds that due process was satisfied under the circumstance of this case. . . .

. . . .

31. Appellants' argument that Hawaii water law and the public trust doctrine—in and of themselves—[require] a contested case hearing under the circumstances of this case, is also without legal support.

. . . .

35. The information before the BLNR at the March 12, 2004 hearing was sufficient for it to discharge its responsibilities pursuant to the public trust doctrine.

. . . .

37. The BLNR's approval of HELCO's request to auction a lease to waters from the Keauhou aquifer was consistent with the public trust doctrine in that doing so protected drinking water resources as provided by the Settlement Agreement. The protection of drinking water resources is an important public trust purpose. [*In re Waiola O Molokai, Inc.,*] 103 Hawai'i [401,] 429, 83 P.3d [664,] 692 [ (2004) ].

. . . .

39. The BLNR, in exercising its custodial management authority over state property permitted under *Sharma*, was not acting in its regulatory or adjudicatory capacity to "regulate" the use of the water in this instance. Rather, the BLNR, as the trustee of the water, as it is with public lands, acted in its proprietary, custodial function to approve the lease of the water rights within its own jurisdiction.

40. Unlike *Waiahole I* and *Waiola*, where the [Commission on Water Resources Management] was required to adjudicate competing uses for limited ground water resources within designated ground water management areas under its jurisdiction, the BLNR properly exercised its proprietary custodial management in considering HELCO's request and granting the auction of a lease for the brackish water at issue.

*41. The [c]ourt finds that HELCO's request to use two-thirds of one percent of the sustainable yield of brackish water from the Keauhou aquifer for industrial purposes in order to effectuate its agreement to transfer 90 percent of its existing incremental entitlement of drinking water to DHHL is in the public interest and consistent with BLNR's public trust responsibilities.*

42. The [c]ourt further finds that the record supports the fact that the BLNR properly balanced and considered the public interest factors, and met its obligations under the public trust doctrine.

43. Appellant further argues that the water lease at issue in this case is non-consumptive and that HRS § 171–58(c) therefore requires that, prior to approving a water lease, the BLNR hold a public hearing, approve a conservation district use permit and [EIS], and obtain approval from the governor and a concurrent resolution from the legislature. The [c]ourt disagrees.

44. Appellant fails to raise the "non-consumptive" argument before the BLNR and [has] thus waived the argument on appeal.

45. Even assuming this [c]ourt considers the argument, the [c]ourt finds that the water lease at issue is consumptive as a matter of fact and law.

46. The fundamental starting point in statutory construction is to look to the language of the statute itself, inasmuch as "a presumption exists that the words in a statute express the intent of the legislature." *Morgan v. Planning Dep't, County of Hawai'i*, 104 Hawai'i [173,] 185, 86 P.3d [982,] 994 (2004) (citation omitted). In looking to the language of the statute, "courts are bound, if rational and practicable, to give effect to all parts of a statute, and . . . no clause, sentence, or word shall be construed as superfluous, void, or insignificant. . . ." *Director, Dep't of Labor & Indus. Relations v. Kiewit Pac. Co.*, 104 Hawai'i 22, 27–28, 84 P.3d 530, 535–36 (2004) (citation omitted).

. . . .

48. The plain language of HRS § 171–58(c) defines non-consumptive use as water "returned to the same stream or other body of water from which it was drawn, *essentially not affecting the volume* and quality of the water or biota in the stream or other body of water[.]" ([E]mphasis added.)

49. *Based on the plain language of HRS § 171–58(c), the water lease issued by BLNR in this case is for consumptive use as a matter of law, given that, in the processing of water for use at the Keahole generating station, approximately forty (40) percent of the water will be lost, and the water that is lost will not be reinjected into the Keauhou aquifer or any other body of water.*

50. Even assuming the water lease is construed as non-consumptive, the BLNR's actions complied with HRS § 171–58(c), inasmuch as the plain language of HRS § 171–58(c) does not require prior approval from the governor and legislature for non-consumptive water leases.

. . . .

52. The plain language of HRS § 171–58(c) provides the state with discretion to lease its water rights, inasmuch as disposition of water rights "may" be made by lease. If the State exercises this discretion, HRS § 171–58(c) mandates that such lease be subject to legislative disapproval, inasmuch as the next sentence provides that disposition "shall" be subject to legislative disapproval.

. . . .

55. The [c]ourt notes that the foregoing is also consistent with the BLNR's and DLNR's interpretation of HRS § 171–58(c), and their interpretation of the statute is entitled to deference by this [c]ourt. *Kiewit Pac. Co.*, 104 Hawai'i at 29, 84 P.3d at 537.

56. Inasmuch as the BLNR was not required to select the alternative method of obtaining prior government approval, the BLNR fully complied with HRS § 171–58(c) and *permissibly chose to issue the subject water lease via subsequent leg-*

*islative disapproval and not prior governor and legislative approval.*

(Emphases added.)

## III.

On appeal, Hui Kakoʻo argues that (1) "this court has appellate jurisdiction to determine whether a contested case hearing should have been held," (2) it "has standing to appeal the decision of the [BLNR]," (3) "the [BLNR] has an affirmative trust obligation to determine the impact of its actions on water resources and native Hawaiian rights," (4) "the [BLNR] violated Hui Kakoʻo's constitutional due process rights by denying [it] an opportunity to be heard in a contested case hearing," inasmuch as (a) "a contested case hearing is required by law to determine the rights, duties or privileges of specific parties," (b) "the [BLNR] acted in an adjudicatory capacity when it approved the issuance of the water lease and determined that it would not impact Hui Kakoʻo's native Hawaiian rights," and (c) "the State has granted contested case hearings in other cases," (5) "[*Sharma*] is distinguishable from the case at bar and should not be used as the basis for a sweeping ruling that any and all determinations made prior to the actual dispositions by the State do not require contested case hearings,"[11] (6) "the State failed to comply with the procedural safeguards explicitly outlined in HRS § 171–58(c) to insure that the [BLNR] properly determines that it is appropriate to issue a water lease," insofar as (a) "HRS § 171–58(c) sets forth the requirements for water leases issued by the [BLNR]," (b) "the subject water lease is for non-consumptive purposes," and (c) "the [BLNR] failed to properly assess the potential impacts associated with issuing the subject water lease as contemplated by the provisions of HRS § 171–58(c)," and (7) "the

[court] erred in denying Hui Kakoʻo's motion for relief from order filed November 3, 2004." In conjunction with its arguments, Hui Kakoʻo asserts that the court erred in finding no. 20 and conclusion nos. 5, 6, 13, 15, 17, 20, 21, 22, 31, 39, 49, 50, and 56.

In its reply brief, Hui Kakoʻo maintains that (1) "[it] acted reasonably to preserve its rights and the State's reliance on *Sharma* was misplaced," (2) "the State cannot avoid its trust obligations simply because there was a settlement agreement or because the proper paperwork had not been filled out," (3) the BLNR improperly treated the lease as a "ministerial act" and summarily denied Hui Kakoʻo's request for a contested case hearing without questioning Nelson as to native Hawaiian rights at issue, (4) "the [BLNR] had an affirmative duty to identify and protect customary native Hawaiian rights," (5) "[it] has standing to challenge the decision of the [BLNR] because its request for a contested case hearing was summarily denied and it had no opportunity to substantiate its claims," (6) "in order to establish appellate jurisdiction, the contested case hearing below does not have to comply with Chapter 91, HRS," and (7) "this court has jurisdiction to determine if a contested case hearing should have been held, even if no contested case hearing was held below."

## IV.

For a contested case hearing to be "required by law" pursuant to HRS 91–14(a), and Hui Kakoʻo thus to be entitled to one, the hearing must be required by agency rule, statute, or the constitution. *PASH II*, 79 Hawaiʻi at 431, 903 P.2d at 1252. As previously noted, at the March 12, 2004 meeting, Nelson asked the BLNR to defer a decision on the long-term lease so that he could provide more information. He further stated

---

11. In support of its contention that *Sharma v. Dep't of Land & Natural Res.*, 66 Haw. 632, 673 P.2d 1030 (1983), is distinguishable from the instant case, Hui Kakoʻo contends that (1) the "very narrow" holding of *Sharma* is only that the BLNR is not required to conduct a contested case hearing for the termination of a lease pursuant to HRS § 171–39 (1993) where the terms of the lease explicitly provide for cancellation upon breach of its terms, (2) the case *Sharma* relies upon, *United States v. Blumenthal*, 315 F.2d 351

(3d Cir.1963), involved a month-to-month lease, unlike the present case, inasmuch as Hui Kakoʻo is claiming that the lease may impact native Hawaiian rights, recognized as a constitutionally protected property interest, (3) when the State issues a water lease, it is not acting like a private lessor and is bound by its duties under statutory and constitutional laws, and (4) *Sharma* deals with the leasing of "public lands," which should not include the leasing of water rights subject to special constitutional trust obligations.

that if the BLNR made a decision that day, he would request a contested case hearing to provide more information.

Clearly, Nelson was attempting to secure an opportunity for Hui Kako'o to provide information regarding the effect the long-term lease would have on its members' purported rights to the land surrounding HELCO's power plant. Hui Kako'o also made this contention before the court in its "Motion for Stay of Decision Dated March 12, 2004." Therein, Hui Kako'o asserted that the BLNR should not have relied on *Sharma* to deny Hui Kako'o a contested case hearing. In conclusion no. 20 related above, the court relied on *Sharma* in deciding that a contested case hearing was not required in the instant case.[12]

**12.** *Sharma* involved the lease of a tract of land on Maui to the plaintiff by the State through DLNR and BLNR action. 66 Haw. at 634, 673 P.2d at 1032. The lease was to run for a term of twenty-nine years beginning on May 11, 1973. *Id.* Pursuant to the terms of the lease, the plaintiff was required to pay rent, maintain a comprehensive public liability insurance policy, and post a performance bond. *Id.* The plaintiff failed to post the bond, but the BLNR overlooked this failure until 1975, when the plaintiff requested approval to subdivide the land and sublease a portion of it. *Id.*

The BLNR denied his request, but its review revealed that the plaintiff still had not posted the bond and, in the meantime, had allowed the insurance policy to lapse. *Id.* The plaintiff was advised by letter to cure these defects, but failed to do so. *Id.* at 634–35, 673 P.2d at 1032. The DLNR then informed the plaintiff that a recommendation to terminate his lease would be presented to the BLNR at its next meeting. *Id.* at 635, 673 P.2d at 1032. This suggestion was adopted by the BLNR at its November 7, 1975 meeting. *Id.* The BLNR authorized a termination of the lease unless the plaintiff complied with its terms within sixty days. *Id.*

The plaintiff was also notified that he had further breached the lease by failing to make his most recent rental payment. *Id.* Plaintiff did not cure any of his defaults within the sixty-day period and on February 13, 1976 the BLNR voted to cancel his lease. *Id.* On February 17, 1976, the plaintiff paid his delinquent rent and requested that the BLNR reconsider the cancellation of the lease. *Id.* at 635, 673 P.2d at 1032–33. However, due to the continuing non-compliance with the other terms of the lease, the BLNR rejected his request and the State resold the lease at public auction. *Id.* at 635, 673 P.2d at 1033.

The plaintiff appealed to the circuit court of the first circuit arguing that he had been denied due process because the BLNR failed to follow HAPA and provide him notice of the contemplated action and a contested case hearing prior to the cancellation. *Id.* at 636, 673 P.2d at 1033. The court granted the State's motion for summary judgment and the plaintiff appealed. *Id.*

This court determined that HAPA does not apply to all agency actions and that the cancellation of a lease did not require notice or a contested case hearing. *Id.* It was explained that an agency must comply with the requirements of HAPA when it is acting in its rule-making or adjudicative capacity, but that agencies also deal with issues related to their "internal management." *Id.* at 637, 673 P.2d at 1033–34. This court observed that what constitutes "internal management" had not been clearly defined, but that the legislative history of HAPA suggested that "custodial management" of public property is primarily a matter of "internal management." *Id.* at 638, 673 P.2d at 1030. The prior case of *Holdman v. Olim*, 59 Haw. 346, 355–56, 581 P.2d 1164, 1170 (1978), was then referred to, in which this court stated that "[w]e think that the internal management of an agency necessarily includes the custodial management of public property entrusted to the agency. The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Sharma,* 66 Haw. at 638, 673 P.2d at 1034 (internal quotation marks and citations omitted).

The provision governing the lease of public land, HRS § 171–20 (1993), was determined not to require a contested case hearing prior to the termination of a lease. *Id.* at 639–40, 673 P.2d at 1035. It was noted that HRS § 171–20 expressly empowers the BLNR to terminate a lease without legal process upon a breach of its terms inasmuch as the BLNR is functioning as any other landlord. *Id.* at 640, 673 P.2d at 1035. This court addressed the plaintiff's claim that he was denied due process by noting that he had had "ample opportunity to demonstrate" his position:

[Plaintiff] nevertheless argues he was denied due process by the summary termination of his tenancy. We do not find the argument persuasive, for the lease provision with reference ... [thereto] ... [was] valid and binding upon ... [him] in the same manner as though the lessor had been a private person. *And he was afforded ample opportunity to demonstrate to the trial court that he was not actually in default or that the State had breached the agreement.* No due process violation appears in the record.

*Id.* at 641, 673 P.2d at 1036 (emphasis added). The circuit court's grant of summary judgment was therefore affirmed. *Id.* at 642, 673 P.2d at 1036.

In the instant case, similar to *Sharma,* the provision allowing the BLNR to issue the long-term lease does not require a hearing prior to agency action. The only mention of a "public hearing" found in HRS § 171–58(c) relates to non-consumptive uses of water. As stated previously, in finding no. 11 and conclusion nos. 43, 44, 45, 48, 49, 50, and 52, the court determined

## V.

Unlike the majority, I would conclude that finding no. 24 and conclusion no. 19, relating to Hui Kakoʻoʻs failure to file a written petition with BLNR for a contested case hearing as required by HAR § 13–1–29, do not preclude a determination that Hui Kakoʻo is entitled to a contested case hearing if it can establish standing. In this regard, as Hui Kakoʻo asserts, "even if the [BLNR] or the DLNR staff had advised Hui Kakoʻo of the [requirement of] filling out of a written request, this would have been futile, based upon the [BLNR's] interpretation of *Sharma*. The law does not require the doing of a futile act."

I believe that Hui Kakoʻo is correct.

At the March 12, 2004 meeting, BLNR conclusively determined that a contested case hearing was not required in the instant case.

Any effort by Hui Kakoʻo to file a written request for a contested case hearing, after BLNR's oral rejection of its request, would have been futile. The law does not require Hui Kakoʻo to undertake a futile act. *See e.g. Poe v. Hawaii Labor Relations Bd.*, 97 Hawaiʻi 528, 537–38, 40 P.3d 930, 939–40 (2002) (noting that where the Hawaiʻi Government Employees Association (HGEA), the exclusive bargaining representative of the complainant, did not respond to or participate in meetings concerning complainant's individual grievance, but separately engaged in negotiations regarding the general subject matter of the grievance with the public employer, it is futile for complainant to request that the HGEA proceed to the last grievance step, which only the HGEA could undertake, before filing a prohibited practice complaint against employer).[13] Accordingly, a contest-

---

that HELCO's use of the water from the Keauhou aquifer was consumptive. Hui Kakoʻo only challenges conclusion nos. 49 and 50. Conclusion no. 49, however, is supported by uncontested, and hence binding, finding no. 11, which explains why the lease is for a consumptive use of water. *See Poe v. Hawaii Labor Relations Bd.*, 97 Hawaiʻi 528, 536, 40 P.3d 930, 938 (2002) (explaining that generally "[u]nchallenged findings are binding on appeal"). Accordingly, I am not persuaded that conclusion no. 49 is wrong. Conclusion no. 50 posits a hypothetical based on the lease being construed as one for non-consumptive water use. As this is not the case, Hui Kakoʻo's challenge to conclusion no. 50 need not be addressed. Hui Kakoʻo has not effectively challenged either conclusion no. 49 or 50 and, therefore, has not refuted the court's determination that HELCO's use of the water was consumptive. Accordingly, as Hui Kakoʻo has not refuted this determination and the plain language of HRS § 171–58(c) does not require a contested case hearing for leases for consumptive water use, Hui Kakoʻo was not entitled to a contested case hearing under HRS § 171–58(c).

**13.** Other cases have held the same. *See Poe v. Hawaii Labor Relations Bd.*, 105 Hawaiʻi 97, 102, 94 P.3d 652, 657 (2004) (holding that an employee who is prevented from exhausting his or her contractual remedies as a result of the union's breach of duty of fair representation as a bargaining agent may bring an action himself against an employer for breach of a collective bargaining agreement, but noting that in this case the employee did not establish that he was deprived of his contractual remedies insofar as he did not request that the union advance his claims to Step 4 arbitration); *In re Doe Children*, 105 Hawaiʻi 38, 59, 93 P.3d 1145, 1166 (2004) (recognizing that Hawaiʻi has a "futility excep-

tion," although it was inapplicable because the administrative process could have provided complainant appropriate relief for grade placement of disabled children if he had requested an impartial due process hearing; however, complainant did not pursue such an avenue, thus the source of the "'futility' [was] not the administrative process but, rather, the party who was seeking relief"); *Hokama v. Univ. of Hawaiʻi*, 92 Hawaiʻi 268, 273, 990 P.2d 1150, 1155 (1999) (recognizing that although "[a]n aggrieved party need not exhaust administrative remedies where no effective remedies exist," in this case it was "unclear from the language of the agreement whether the damages sought by [complainant] are available under the [University of Hawaiʻi] grievance procedure."); *Waugh v. Univ. of Hawaiʻi* 63 Haw. 117, 129, 621 P.2d 957, 967 (1980) (noting that the appellant was not required to follow University administrative procedures because there were no established internal procedures for handling claims such as his and the ad hoc procedures created were not binding on the University and the Board of Regents); *Baldeviso v. Thompson*, 54 Haw. 125, 132, 504 P.2d 1217, 1222 (1972) (concluding that because the reasonableness of the 30–day time limit in the welfare application process must be evaluated according to the amount of resources allocated to accomplish the task, as well as other surrounding circumstances, the claims of the appellants are of a nature that does not require exhaustion of administrative remedies); *Winslow v. State*, 2 Haw. App. 50, 56, 625 P.2d 1046, 1051 (1981) (opining that in the enactment of the contract's grievance procedures, it was not contemplated that the employee would utilize the procedures in a grievance against the union itself, and no provisions were incorporated into the contract to address the event; thus, the appellant could not be re-

ed case hearing is not foreclosed by finding no. 24 and conclusion no. 19.[14]

## VI.

### A.

The majority maintains that Hui Kako'o should have filed a written petition for a contested case hearing, despite the BLNR's previous denial of its oral request, and that Hui Kako'o's failure to do so is fatal to this court's review under HRS § 91-14(a). Majority opinion at 40-41, 143 P.3d at 1242-43. As noted above, Nelson asked BLNR to defer rendering a decision on HELCO's request for the lease, but if the decision was to be made that day, he would request a contested case hearing to provide "more information" to BLNR. Rather than deferring its decision, BLNR moved into "Executive Session" to consult with Izu. After resuming the meeting, the minutes show that BLNR denied Hui Kako'o's request, stating that "[Izu] clarified that contested case hearings on dispositions were not allowed. Hence a contested case hearing is *not available.*" (Emphasis added.) By its denial, BLNR indicated, in effect, that it would reject any such request because it believed, as it argues on appeal, that contested case hearings are

not "required on dispositions [of water leases]." In other words, BLNR's response signified that a contested case hearing would not be granted to *any party*, under any circumstances. This rejection was without condition and was, therefore, absolute.

In its assertion that "the BLNR's oral rejection of an oral or written request for a contested case hearing presented by the close of a board meeting cannot be said to be absolute or final," majority opinion at 41, 143 P.3d at 1243, the majority ignores Izu's representations to BLNR. As discussed, she apparently informed BLNR that contested case hearings were not available. This left no possibility of a change in BLNR's decision and cannot reasonably be viewed as anything less than final.

### B.

Nor did the BLNR give leave to file a written petition for a contested case hearing following the oral disallowance. Such leave is not contemplated under HAR § 13-1-29. The plain language of HAR § 13-1-29, *see supra* note 1, does not state that a party should file a written petition for a contested case hearing *after a rejection of its oral request by the BLNR*, as the majority would

quired to exhaust contractual remedies in an action against the union where no such remedies actually existed). I note that although the majority maintains that several of the preceding cases are distinguishable, it fails to provide any discussion or argument to support this contention. Further, the majority appears to agree with the analysis of *Winslow* and *Poe*, 97 Hawai'i at 537-38, 40 P.3d at 939-40, made herein, inasmuch as it has incorporated our supporting cases into its discussion.

Hui Kako'o cites to *State v. Grace*, 107 Hawai'i 133, 140 n. 7, 111 P.3d 28, 35 n. 7 (2005). In a footnote in *Grace*, the Intermediate Court of Appeals (ICA) recognized that a hearsay declarant would not be considered unavailable for confrontation clause purposes unless the prosecution had made a "good faith" effort to obtain his or her presence at trial. *Id.* However, it was concluded that if there was no possibility of obtaining the hearsay declarant's presence at trial, for instance because of his or her death, "good faith" required nothing of the prosecution. *Id.* Although *Grace* contains the general proposition that the law does not require a party to perform a futile act, the cases provided *supra* are more on point with the instant case.

14. Based on this holding, Hui Kako'o's challenges to conclusion no. 17, which states that the instant appeal does not arise from a contested case hearing, conclusion no. 31, rejecting Hui Kako'o's argument that Hawai'i water law and the public trust doctrine require a contested case hearing, and conclusion no. 39, related to BLNR acting in a custodial function in approving the lease, need not be discussed. Also, Hui Kako'o's challenges to conclusion nos. 20 and 22, stating that a contested case hearing was not required "by law" or by due process need not be addressed, inasmuch as Hui Kako'o's entitlement to a contested case hearing would be determined after the hearing on its standing had taken place. Additionally, based on this holding, Hui Kako'o's argument in (4)(c) that "the State has granted contested case hearings in other cases" or HELCO's assertion in (2)(f) that Hui Kako'o was not entitled to a contested case hearing simply because contested case hearings may have been held in other unrelated matters, need not be reached. I also need not discuss further Hui Kako'o's argument in (7) that "the [court] erred in denying Hui Kako'o's motion for relief from order filed November 3, 2004."

have it. The information required to be included in a written petition, *id.*, e.g. "the legal authority under which the proceeding, hearing or action is to be held or made," "the petitioner's interest that may be affected," "the disagreement, denial, or grievance which is being contested by the petitioner," "the basic facts and issues raised," and "the relief to which the party or petitioner seeks or deems itself entitled," HAR § 13–1–29, consists of matters necessary to determine whether a contested case hearing should be held. Such information would be irrelevant once BLNR rendered its decision on the request.

With all due respect, to require, then, that a written petition was necessary after the rejection by BLNR is a construction of the rule that would render the rule "absurd" under our standards and, thus, is to be avoided by this court. *See Leslie v. Bd. of Appeals*, 109 Hawai'i 384, 393, 126 P.3d 1071, 1080 (2006) (stating that "[d]eparture from the literal construction of a statute is justified only if such a construction yields an absurd and unjust result obviously inconsistent with the purposes and policies of the statute" (internal quotation marks and citations omitted)); *Allstate Ins. Co. v. Ponce*, 105 Hawai'i 445, 454, 99 P.3d 96, 105 (2004) (declaring that "[t]he general principles of construction which apply to statutes also apply to administrative rules"); *State v. Cornelio*, 84 Hawai'i 476, 484, 935 P.2d 1021, 1029 (1997) (noting that "the legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality" (internal quotation marks and citation omitted)).

### C.

The majority notes that HAR § 13–1–29(a) does not specify under what circumstances a party is required to file a written petition requesting a contested case hearing, but asserts that "requiring a petitioner to file a written petition *after* relief has already been granted is nonsensical[,]" majority opinion at 42, 143 P.3d at 1244 (emphasis in original), and notes that "HAR § 13–1–29 appears to anticipate such a scenario by providing the BLNR with authority to waive the time requirement for making an oral or written request and submitting a written petition[,]" *id.* at 42 n. 17, 143 P.3d at 1244 n. 17 It would be equally "nonsensical," *id.* at 42, 143 P.3d at 1244, however, to require a petitioner to file a written petition after an oral request for a contested case hearing has been denied, as the majority proposes. The provision allowing BLNR to waive the time requirement for filing the written petition would be equally irrelevant after an oral request for a contested case hearing had been denied inasmuch as the petition would not serve its purpose.

The simple fact is that HAR § 13–1–29 is silent as to the procedure to follow in the event that BLNR rejects a request for a contested case hearing before a written petition is filed. The only reasonable and logical reading of HAR § 13–1–29 is that a request is an event separable from the written petition for a contested case hearing. As mentioned before, the rule enumerates matters to be included in a written petition germane to determining whether a contested case hearing should be held.

The written petition plainly would be unavailing once the BLNR issued its decision on the oral request. It would be fruitless, then, to submit a contested case petition. As explained *supra*, parties need not exhaust administrative remedies when to do so would serve no purpose. It is only when such a decision has not yet been made that a written petition, and the information contained therein, would be useful to the BLNR and aid it in deciding the question. Accordingly, as discussed previously and contrary to the majority's assertion, this court is not bound on appeal by finding no. 24, related to Hui Kako'o's failure to file the written petition, inasmuch as, as a matter of law, doing so would have been futile.[15] *See* cases cited *supra.*

---

15. In support of the proposition that Hui Kako'o is precluded from seeking judicial review, the majority relies on *Simpson v. Dep't of Land &* *Natural Res.*, 8 Haw.App. 16, 791 P.2d 1267 (1990), recently overruled in *Aha Hui Malama O Kaniakapupu v. Land Use Comm'n*, 111 Hawai'i

Because a written petition would only be useful to BLNR when a decision has not been made on an oral request for a contested case hearing, the majority is incorrect in its assertion that "if the BLNR's oral rejection of a petitioner's oral or written request made by the close of a public hearing or a board meeting is deemed conclusive, then HAR § 13–1–29's requirement that the oral or written request be followed by a written petition would be superfluous or of no significance." Majority opinion at 42, 143 P.3d at 1244. This language is not rendered "superfluous" inasmuch as such language logically would apply when a decision has not yet been made by the agency. Therefore, such an interpretation would not ignore "the cardinal rule of statutory construction that courts are bound, if rational and practicable, to give effect to all parts of a statute," *Coon v. City & County of Honolulu*, 98 Hawai'i 233, 259, 47 P.3d 348, 374 (2002), as the majority maintains. Majority opinion at 42, 143 P.3d at 1244. Manifestly, it would not be "rational and practicable," *Coon*, 98 Hawai'i at 259, 47 P.3d at 374, to require a party to file a written petition for a contested case hearing after its oral request had already been denied. Rather, it would make the request process meaningless and render the rule ir-

124, 139 P.3d 712 (2006), to the extent that it remanded that case with instructions to hold a contested case hearing. Majority opinion at 42, 143 P.3d at 1244. *Simpson*, however, is inapposite. In that case, the futility of a written petition was not addressed, or relevant, as a previous oral request had *not* been denied. Simpson, a *pro se* party appeared at a public hearing held by the BLNR on his application for a commercial boat mooring permit. 8 Haw.App. at 18, 791 P.2d at 1270.

At a subsequent meeting, the BLNR denied Simpson's application. *Id.* at 19, 791 P.2d at 1270. Simpson filed a notice of appeal in the second circuit court. *Id.* at 19, 791 P.2d at 1271. DLNR's motion to dismiss was granted and Simpson appealed. *Id.* The ICA determined that Simpson had not properly requested a contested case hearing, thus providing an inadequate record for judicial review. *Id.* at 24, 791 P.2d at 1273.

The ICA recognized that, at the time of the hearing he attended, Simpson, as a *pro se* applicant, was unaware of the requirements of HAR § 13–1–29 and concluded that BLNR should have informed him of his right to request a contested case hearing. *Id.* at 26, 791 P.2d at

rational and impractical. With all due respect, it is the majority, then, that ignores the cardinal rule of statutory construction that this court should avoid construing a statute in a way that would lead to an absurd result. *See* discussion *supra*.

### D.

The majority posits that "it cannot be said that the BLNR had ample time to fully consider the merits of [the oral requests of Hui Kako'o, Waimana, and Hee]," majority opinion at 41, 143 P.3d at 1243, and rests its application of HAR § 13–1–29 on the assertion that the rule "anticipates exactly what occurred in this case—an oral request and insufficient time to deliberate, resulting in a perfunctory ruling[,]" *id.* at 42, 143 P.3d at 1244. Nothing could be further from the facts.

The majority's assertions are wholly speculative and without any support in the record. It should be noted that the minutes of the March 12, 2004 meeting do not reflect that BLNR needed more time to consider Hui Kako'o's oral request or that it had insufficient time to discuss or to deliberate on the request. There is also nothing in the record to suggest that the BLNR's denial of Hui

1274. The case was then remanded so that in the interest of fairness, a contested case hearing could be held. *Id.* The majority states that this court criticized the ICA's decision to remand the case in a footnote in *Pele Def. Fund v. Puna Geothermal Venture*, 77 Hawai'i 64, 69 n. 10, 881 P.2d 1210, 1215 n. 10 (1994). Majority opinion at 40 n. 15, 143 P.3d at 1242 n. 15.

However, like *Simpson*, *Pele Defense Fund* and *Aha Hui* are inapposite. The filing of a written petition requesting a contested case hearing was not at issue in *Pele Defense Fund* and, therefore, the futility of doing so after the denial of an oral request was not at issue. That case focused on entitlement to a contested case hearing based on constitutional due process. 77 Hawai'i at 68–72, 881 P.2d at 1214–18. Likewise, *Aha Hui* concerned whether a hearing constituted a contested case hearing subject to judicial review. 111 Hawai'i at 125, 139 P.3d at 713. That case did not involve a request for a contested case hearing. *Aha Hui*, therefore, did not consider the denial of an oral request for a contested case hearing nor did it discuss the futility of a subsequent written petition. Accordingly, *Pele Defense Fund* and *Aha Hui* are wholly irrelevant to the determination of whether the instant case should be remanded for a hearing on Hui Kako'o's standing.

Kakoʻo's request for a contested case hearing was "perfunctory" or "cursory," as the majority suggests. *Id.* at 41–42, 143 P.3d at 1243–44. To the contrary, BLNR clearly considered Hui Kakoʻo's request important enough to move into Executive Session to consult with Izu.

Rather, it would appear more logical and in consonance with the facts and with BLNR's position on appeal to conclude that inasmuch as Izu apparently had advised BLNR that such contested case hearings were not allowed, BLNR would not require much time to determine that it would deny Hui Kakoʻo's request for one. On the other hand, the majority's argument that the BLNR did not have time to adequately consider Hui Kakoʻo's request for a contested case hearing actually supports the conclusion herein that a hearing should be held in which Hui Kakoʻo could provide BLNR "more information" regarding standing. Indeed the majority states, "Appellants *should be afforded another opportunity* to provide more information to the BLNR." Majority opinion at 42, 143 P.3d at 1244 (emphasis added). However, the majority inexplicably denies Hui Kakoʻo this "second opportunity," *id.* at 42, 143 P.3d at 1244, because according to the majority, Hui Kakoʻo could have "presented a subsequent written petition[,]" *id.* By this strained reasoning the majority lays its perceived defect of the "perfunctory" and "cursory" "ruling" it attributes to the BLNR at the feet of Hui Kakoʻo.

### E.

Additionally, the majority construes HAR § 13–1–29(a) as indicating that BLNR will "reconsider" a previous denial of an oral request for a contested case hearing upon the filing of a written petition and that after

this reconsideration BLNR could have reversed itself and granted Hui Kakoʻo's request. Majority opinion at 43, 143 P.3d at 1245. However, HAR § 13–1–29 does not refer *at all* to reconsideration of a decision rejecting a request for a contested case hearing. Thus, the suggestion that HAR § 13–1–29 would give Hui Kakoʻo another chance to provide BLNR more information and the majority's reliance on *In re Doe Children*, 105 Hawaiʻi 38, 60, 93 P.3d 1145, 1167 (2004), majority opinion at 42, 143 P.3d at 1244, plainly is at odds with the language of the rule.[16] Further, it is again speculation to suggest that the BLNR might have reversed itself and granted Hui Kakoʻo's request for a contested case hearing had it filed a written petition, as the majority proposes. *Id.* As mentioned before, BLNR's determination was based on advice from Izu and, apparently, a legal interpretation of cases. This evidences that Hui Kakoʻo, as did all the other parties, took BLNR at its word and understood its decision as final, and thus appealable.

### VII.

Having determined that Hui Kako should not be deprived of its right to appeal for failure to comply with HAR § 13–1–29, *Sharma* does not presage the appropriate result in this case. In *Sharma*, this court specifically stated that the plaintiff was "afforded ample opportunity" to show that he was not in default of the terms of his lease. *Sharma*, 66 Haw. at 641, 673 P.2d at 1036. The procedure followed here was not comparable.

Hui Kakoʻo asserts that "[i]t was only by chance that Hui Kakoʻo's president, Blossom Feiteira[,] became aware of the matter and asked [Nelson], a member of Hui Kakoʻo and

---

16. The majority relies on *In re Doe Children*, which held that a surrogate parent could not avail herself of the "futility exception" to obtain judicial review of a family court order placing her surrogate child in the eighth grade in school, rather than the ninth grade. 105 Hawaiʻi at 60, 93 P.3d at 1167. In that case the parent could have requested an administrative due process hearing to review the order, but did not do so. *Id.* However, it was noted that, had the surrogate parent requested an administrative hearing on the surrogate child's behalf, the administra-

tive process was specifically designed to afford the surrogate child an effective remedy regarding the family court order. *Id.*

    In the instant case, the written petition would not have provided an effective remedy insofar as BLNR's decision at the March 12, 2004 meeting rendered it a futile exercise. Hui Kakoʻo would not be afforded a similar opportunity to avail itself of an administrative process inasmuch as its request for a contested case hearing had already been rejected.

resident of Kona, to attend the meeting," and that "[e]ven though the hearing was held on Oahu, Hui Kako'o appeared at the hearing *pro se* through [Nelson]." Further, Hui Kako'o specifically states that "at the March 12, 2004 meeting, Hui Kako'o did not have time to fully review and comprehend what impacts could result from the issuance of the lease." As stated previously, Nelson requested that the matter be deferred by BLNR in order for Hui Kako'o to provide "more information." He also asked that a contested case hearing be held.

Article XII, section 7 of the Hawai'i Constitution, entitled "Traditional and Customary Rights," requires the protection of traditional native Hawaiian practices, stating that "[t]he State reaffirms and *shall protect all rights, customarily and traditionally exercised for subsistence, cultural and religious purposes* and possessed by ahupua'a tenants who are descendants of native Hawaiians who inhabited the Hawaiian Islands prior to 1778, subject to the right of the State to regulate such rights." (Emphasis added.) In furtherance of this constitutional mandate, in *PASH I* it was determined that "all government agencies undertaking or approving development of undeveloped land *are required to determine if native Hawaiian gathering rights have been customarily and traditionally practiced on the land in question and explore the possibilities for preserving them.* At least that much is required by article XII, § 7." 79 Hawai'i at 253–54, 900 P.2d at 1320–21 (emphasis added).

As Hui Kako'o argues, the minutes of the March 12, 2004 meeting are devoid of any effort by BLNR to determine whether or not the members of Hui Kako'o took part in such practices. According to the minutes, immediately after Nelson spoke, BLNR conducted a ten minute "Executive Session" with Izu and then determined that a contested case hearing was not available based on her advice. I believe, like the *PASH I* court, that article XII, section 7 requires more. In my view, under these circumstances, BLNR should have made an inquiry regarding practices protected by article XII, section 7.

In the interest of fairness, Hui Kako'o should be given an opportunity to establish its standing to challenge the long-term lease. *See PASH II*, 79 Hawai'i at 443, 903 P.2d at 1263 (stating that "the *reasonable* exercise of ancient Hawaiian usage is entitled to protection under article XII, section 7" (emphasis in original)). This court has held that standing to challenge government action can be based on the exercise of native Hawaiian rights. *See Ka Pa'akai O Ka'ina,* 94 Hawai'i at 42, 7 P.3d at 1079 (stating that "[w]ith regard to native Hawaiian standing, this court has stressed that the rights of native Hawaiians are a matter of great public concern in Hawai'i" and recognizing that "[o]ur fundamental policy [is] that Hawaii's state courts should provide a forum for cases raising issues of broad public interest, and that the judicially imposed standing barriers should be lowered when the needs of justice would be best served by allowing a plaintiff to bring claims before the court" (internal quotation marks and citations omitted)).

Therefore, BLNR was required to conduct a hearing in order to provide Hui Kako'o the opportunity to present any evidence it may have that its members actually use the area surrounding HELCO's power plant for native Hawaiian traditional and customary practices. If Hui Kako'o can make a showing that "some of its members are 'specifically, personally and adversely affected by the [BLNR's] action," *PASH I,* 79 Hawai'i at 253 n. 11, 900 P.2d at 1320 n. 11, it will be deemed "an aggrieved person with standing," *id.* A contested case hearing would then be "required by law" pursuant to HRS 91–14(a), in light of the mandates of article XII, section 7, and *PASH II.*

Finding nos. 20, 21, and 22 and conclusion nos. 5, 6, 11, 13, 14, and 15 relate to Hui Kako'o's failure to produce testimony or evidence that its members personally used the area surrounding the Keahole plant for the exercise of native Hawaiian rights, and that it, therefore, had failed to establish standing. However, as stated previously, Hui Kako'o requested more time to present information on whether or not its members exercised native Hawaiian rights in the area surrounding the Keahole plant. Further, pursuant to article XII, section 7 and *PASH I,* BLNR had a duty to inquire and determine "if na-

tive Hawaiian gathering rights have been customarily and traditionally practiced on the land in question and explore the possibilities for preserving them." *Id.* at 253–54, 900 P.2d at 1320–21. The BLNR failed to do so. Accordingly, I believe the BLNR's and the court's ruling denying Hui Kako'o standing at this point is wrong on independent state constitutional grounds.

### VIII.

As indicated previously, the issue of whether Waimana and Hee complied with the mandates of HAR § 13–1–29 is immaterial. The court did not find that HAR § 13–1–29 applied to Waimana and Hee as the majority does. However, as will be elucidated *infra,* I believe Waimana and Hee are collaterally estopped from contesting issues related to BLNR's grant of CDUA HA–487A.

On appeal, Waimana and Hee maintain that (1) "the [court] had jurisdiction to address the administrative appeal," insofar as (a) Waimana and Hee appeared at BLNR's December 12, 2003 and March 12, 2004 meetings and requested a contested case hearing, and (b) BLNR concluded that Waimana and Hee were not entitled to a contested case hearing, (2) "the [court's] dismissal of [Waimana and Hee's] administrative appeal, based upon lack of standing to challenge the proposed agency action by BLNR, was error," inasmuch as (a) BLNR failed to reach the issue of standing, and (b) HELCO incorrectly asserts that Waimana and Hee lack standing based on *res judicata,* because (i) "where a party is dismissed from an action, based upon a determination that the party lacks standing, *res judicata* does not apply," (ii) "other courts have held that *res judicata* has been and should be suspended where public policy and fairness concerns essentially trump preclusive effect," (iii) when the public trust is concerned, "full adjudication on the merits is warranted," (iv) "the issuance of a water lease to HELCO by BLNR was never fully and finally adjudicated in a prior proceeding," (v) "the [court] erred where as a matter of judicial notice it *sua sponte* determined that [Waimana and Hee] lacked standing to contest BLNR's issuance of a water lease to HELCO," and (vi) "judi-

cial notice of the 1994 remand order was inappropriate," (3) "a contested case hearing was clearly mandated as a matter of law and public policy," because (a) "under the public trust doctrine, a contested case hearing is required," (b) "Hawaiian constitutional law mandates that a contested case be held in this matter," (c) the court improperly relied on *Sharma,* (d) "BLNR failed to comply with HRS § 171–58," and (e) BLNR has an "unavoidable conflict of interest in this case" between enforcing state law and honoring the terms of the settlement agreement it entered into with HELCO, and (4) the court improperly denied Waimana and Hee's HRCP Rule 60 motion. In conjunction with their arguments on appeal, Waimana and Hee maintain that the court erred in conclusion nos. 12, 18, 19, 20, 21, 27, 29, 31, 35, 37, 40, 41, 42, 43, 44, 45, 46, 49, 50, 52 and 55. In their reply brief, Waimana and Hee contend that (1) "where property rights are impacted by agency action, the proceeding is by definition a contested case hearing for purposes of [HRS] Chapter 91," (2) "BLNR has conceded [the] right to a contested case hearing in water rights cases," and (3) "standing and *res judicata* issues raised by HELCO are red-herrings."

### IX.

We concluded in *Waimana I* that Waimana lacked standing to challenge the first extension granted to HELCO to complete construction of its power plant under CDUA HA–487A. 110 Hawai'i at 428–29, 134 P.3d at 594–95. It was held that Waimana was barred by collateral estoppel due to a previous denial of its standing to challenge issues related to BLNR's grant of CDUA HA–487A, that had gone uncontested. *Id.* at 428, 134 P.3d at 594.

In litigation occurring in 1994, the court had issued a remand order, remanding the CDUA to BLNR to hold a contested case hearing. *Id.* The order indicated that, with respect to Waimana, "Waimana [did] not have a due process right to a contested case hearing because its economic interest [did] not constitute 'property' within the meaning of the due process clauses" and that by "[n]ot having a right to a contested case hearing by

statute, rule or by the constitution, Waimana lack[ed] standing to file [the appeal] pursuant to HRS Section 91–14(a)[.]" *Id.* Waimana never challenged these conclusions. *Id.*

Thus, we held that Waimana "was collaterally estopped from relitigating the issue of its standing to challenge decisions regarding CDUA HA–487A." *Id.* at 428–29, 134 P.3d at 594–95. In *Waimana I*, it was also determined that Waimana had failed to establish a sufficient property interest to have suffered a due process violation under the Fourteenth Amendment to the United States Constitution or article I, section 5 of the Hawai'i Constitution. *Id.* at 431–35, 134 P.3d at 597–601. Therefore, Waimana was precluded from contesting HELCO's first request for extension of time in *Waimana I*. *Id.* at 435, 134 P.3d at 601.

Similarly, in *Waimana II*, we concluded that Waimana was collaterally estopped from challenging the grant of a second time extension to HELCO to construct the Keahole plant. *Waimana II*, memo op. at 8–9. We said that "inasmuch as Waimana could not contest HELCO's first request for extension of time under CDUA HA–487A because it was collaterally estopped" as indicated in *Waimana I*, "the doctrine of collateral estoppel, which is again based on the resolution in the 1994 remand order litigation, operates to bar Waimana's challenge to HELCO's second request for extension of time as well." *Id.* at 8, 9.

In the instant case, it likewise follows that Waimana is barred from challenging HELCO's long-term lease because Waimana lacked standing to challenge CDUA HA–

487A. CDUP HA–487A was the permit allowing the construction of the power plant resulting from approval of CDUA HA–487A. The parties negotiated the November 4, 2003 settlement agreement to resolve the dispute regarding the first time extension under CDUP HA–487A.[17] *Waimana I*, 110 Hawai'i at 424, 134 P.3d at 590. As part of the settlement agreement with respect to CDUA HA–487A, *see supra*, the court found in uncontested finding no. 4 that HELCO had agreed to transfer ninety percent of its "drinking water" allocation to DHHL.

Uncontested finding no. 6 states that the transfer of the drinking water was conditioned upon HELCO securing an adequate supply of brackish water to meet its industrial needs. Finding no. 7, which again is uncontested, states that, without access to the brackish water, HELCO could not transfer the drinking water to DHHL because it would need it to operate the Keahole plant. The lease, therefore, arises directly from the settlement agreement with respect to CDUP HA–487A. In *Waimana I*, this court concluded that Waimana "was collaterally estopped from relitigating the issue of its standing to challenge decisions regarding CDUA HA–487A." 110 Hawai'i at 428–29, 134 P.3d at 594–95. As indicated, the lease is inextricably linked to CDUA HA–487A. Accordingly, Waimana is collaterally estopped from challenging the issuance of the lease to HELCO.

As stated in *Waimana II*, the doctrine of collateral estoppel would also operate against Hee, who, although not a party in *Waimana I*, is in privity with Waimana as its president.[18] *Waimana II*, memo op. at 9. In

17. Waimana was not a party to the settlement agreement. *Waimana I*, 110 Hawai'i at 424, 134 P.3d at 590. Although Waimana was not one of the original parties ordered into mediation, HELCO's counsel contacted Waimana's counsel to determine Waimana's position regarding the settlement negotiations. *Id.* In a conversation with HELCO's counsel, Hee indicated that he considered the settlement efforts a "waste of time." *Id.* HELCO's counsel informed Waimana by letter that it would keep its "perspective in mind" throughout the negotiations. *Id.* Waimana did not respond. *Id.*

18. In concluding that Hee was in privity with Waimana, in *Waimana II*, we relied on *Dorrance v. Lee*, 90 Hawai'i 143, 148, 976 P.2d 904, 909

(1999) (stating that "[i]ssue preclusion, or collateral estoppel, on the other hand, applies to a subsequent suit between the parties *or their privies* on a different cause of action and prevents the parties *or their privies* from relitigating any issue that was actually litigated and finally decided in the earlier action" (some emphases added and some omitted)); *Marine Midland Bank v. Slyman*, 995 F.2d 362, 365 (2d Cir.1993) (finding that parties who were officers, directors, and sole shareholders of a corporation were in privity with it); *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir.1985) (holding that the founder, president, chairman of the board, and substantial shareholder of a corporation was in privity with the corporation); *Drier v. Tarpon Oil Co.*, 522 F.2d 199, 200 (5th Cir.1975) (opining that the

*Waimana II*, it was also concluded that Hee had failed to establish (1) that because he was on the DHHL "wait list" for an award of agricultural land adjacent to HELCO's power plant, he had a constitutionally protected property interest in such land, inasmuch as the adjacent land was intended for development as a residential area, *id.* at 10–11; (2) that he had a constitutionally protected property interest in adjacent land "as a beneficiary of State-ceded lands upon which HELCO's peaking station at Keahole is located"; and (3) that he had a constitutionally protected property interest as a beneficiary of the "public trust" arising from his status as a native Hawaiian, *id.* at 11–12.

As to specific sub-arguments in item (2)(b)(i), Waimana and Hee appear to argue that a determination of standing is not a judgment "on the merits." *Waimana I*, 110 Hawai'i at 428, 134 P.3d at 594. However, in *Waimana I*, it was determined that because Waimana had an opportunity to fully litigate the issue of its standing, there was a judgment "on the merits" for purposes of collateral estoppel. *Id.* at 429–30, 134 P.3d at 595–96. As to items (2)(b)(ii) and (iii), other than saying that their arguments regarding public policy, fairness, and the public trust "should" lead to full adjudication that includes them, Waimana and Hee fail to provide a basis as to why this "should" occur.

It may be observed that, in *Waimana I*, the concurring opinion noted that the court, as well as the governmental agencies involved, had adequately considered the interests of the public trust. *Id.* at 438, 134 P.3d at 604 (Del Rosario, J., concurring). In item (2)(b)(iv), Waimana and Hee assert that because the issuance of a lease to HELCO has never been fully and finally adjudicated, *res judicata* should not act to bar their challenge to the lease. Whether the issuance of the lease has been adjudicated, however, is not relevant to Waimana and Hee's standing to challenge it. Waimana and Hee's argument in item (2)(b)(v) that the court erred in "*sua sponte*" determining a lack of standing is wrong as a matter of law.

In *Waimana I*, it was clearly recognized that a court may address the question of a plaintiff's standing *sua sponte* inasmuch as it implicates the court's jurisdiction. *Id.* at 428 n. 18, 134 P.3d at 594 n. 18. As to their argument in item (2)(b)(vi) that the court inappropriately took judicial notice of the 1994 remand order, other than their conclusory statement, Waimana and Hee offer no argument as to why the court's action was inappropriate. This argument, therefore, does not need to be addressed further. Based on the foregoing, the court was correct in determining that Waimana and Hee lacked standing to challenge the BLNR's decision to grant the long-term lease. Therefore, we should conclude the same.

Also, I must disagree with Waimana and Hee's argument (1) that the court had jurisdiction over their administrative appeal inasmuch as, as previously stated, standing relates to a court's jurisdiction and Waimana and Hee lacked standing. Waimana and Hee also fail to support their argument (1)(a) that their appearance at BLNR's December 12, 2003 and March 12, 2004 public hearings establishes that they have standing to challenge the lease; and as to (1)(b), do not provide any legal, constitutional, or factual support for their "equitable estoppel" argument.

Further, Waimana and Hee's argument (2)(a) that BLNR failed to reach the issue of their standing would not be relevant. Because they lack standing, we need not decide Waimana and Hee's arguments (3)(a), (b), (c), (d), and (e), and (4) inasmuch as a party lacking standing would not be entitled to a contested case hearing under any of the theories posited, would not be able to challenge BLNR's actions related to the settlement agreement, and would not be entitled to relief under HRCP Rule 60(b).

Finally, Waimana and Hee assert in their reply brief that the issue of standing is a "red-herring" because it is irrelevant to the issue of whether BLNR improperly denied

---

president of a corporation, who was also a major stockholder, was in privity with the corporation); *Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380, 384–85 (N.D.1992) (concluding that

privity existed between a closely held corporation and its president for purposes of res judicata and collateral estoppel where the president was the sole shareholder).

their request for a contested case hearing. However, a party without standing to contest a given issue would not be entitled to a contested case hearing. Hence, the arguments raised by Waimana and Hee to the effect that they should not be collaterally estopped from challenging the lease because of a lack of standing are unpersuasive.

## X.

For the foregoing reasons, I would affirm the court's February 2, 2005 final judgment and April 1, 2005 Order Denying the Motion for Relief from Order filed November 3, 2004 in part as related to Waimana and Hee. I would vacate the court's February 2, 2005 final judgment and April 1, 2005 Order Denying the Motion for Relief from Order filed November 3, 2004 as related to Hui Kako'o and remand this case to the court with instructions to remand to the BLNR with instructions to conduct a hearing as to Hui Kako'o's standing.